UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                               :

SAINT VINCENT CATHOLIC MEDICAL    :
CENTERS and QUEENSBROOK
INSURANCE LIMITED,                     :    1:09-CV-9730 (KPC)
                                               :

                    Plaintiffs,        :

           -against-             :

MORGAN STANLEY INVESTMENT       :
MANAGEMENT INC.,                 :

                  Defendant.    :

----------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MORGAN STANLEY INVESTMENT MANAGEMENT INC.'S MOTION TO DISMISS

BUTZEL LONG,
a professional corporation

Eric B. Fisher
380 Madison Avenue
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
fishere@butzel.com

*Attorneys for Plaintiffs Saint Vincent
Catholic Medical Centers and
Queensbrook Insurance Limited*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................. 3

I.   MSIM Breached Its Fiduciary Duties With Respect To The Plan .............................. 3

II.  MSIM Breached Its Fiduciary Duties With Respect To The Insurance Fund ............ 7

ARGUMENT .................................................................................................. 8

I.   MSIM's Motion Should Be Denied Because SVCMC and QIL Have
     Pled Facts Sufficient To Support Their Claims ...................................................... 8

II.  MSIM Breached Its Fiduciary Duties Under ERISA To The Plan ........................... 10

     A.   MSIM Was A Fiduciary Of The Plan ............................................................. 10

     B.   MSIM Breached Its Fiduciary Duties ............................................................. 10

          i.   Duty to Invest Prudently ......................................................................... 11

          ii.  Duty to Diversify ................................................................................... 12

     C.   MSIM's Mismanagement Caused The Losses Incurred By SVCMC ............. 14

III. As The Plan's Professional Investment Manager, MSIM Cannot Relieve
     Itself Of Fiduciary Duties ...................................................................................... 16

IV.  MSIM Breached Its Fiduciary Duties To The Insurance Fund ................................ 17

     A.   MSIM Was A Fiduciary Of The Insurance Fund ........................................... 17

     B.   MSIM Deviated From The Investment Guidelines Provided By QIL ............. 18

     C.   MSIM's Mismanagement Caused The Losses Incurred By QIL
          Through Its Insurance Fund ......................................................................... 19

V.   The Martin Act Does Not Preempt QIL's Common-Law Breach Of
     Fiduciary and Breach of Contract Claims .............................................................. 19

VI.  SVCMC's Claim Is Not Barred Due To Alleged Failure To Object In
     Writing To Account Statements Supplied By MSIM ............................................. 21

i

VII.  QIL's Breach Of Fiduciary Duty Claim Is Not Duplicative Of Its Breach Of Contract Claim Nor Is It Barred By The Economic Loss Doctrine ................... 22

VIII. Factual Issues Cannot Be Determined On A Motion To Dismiss ........................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

<u>Cases</u> ................................................................................................................. <u>Pages</u>

*Abbey v. 3F Therapeutics Inc.*,
   2009 WL 4333819 (S.D.N.Y. Dec. 2, 2009) ............................................................ 20

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................... 21

*Anastasi v. Emanuel*,
   270 A.D.2d 37, 37 (1st Dep't 2000) ...................................................................... 21

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937, 1949 (2009) .................................................................................. 9

*Assured Guaranty (UK) Ltd. v. J.P. Morgan Inv. Mgmt., Inc.*,
   Index No. 603755/08 (Sup. Ct., N.Y. County, Jan. 29, 2010) .......................... 19, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) ....................................................................................... 9

*Better Benefits, Inc. v. Protective Life Ins. Co.*,
   2004 WL 633730 (S.D.N.Y. Mar. 30, 2004) ........................................................ 23

*Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*,
   620 N.Y.S.2d 196 (4th Dep't 1994) ...................................................................... 23

*Brooks v. Key Trust Co. Nat'l Ass'n*,
   809 N.Y.S.2d 270 (3d Dep't 2006) ....................................................................... 22

*Bullmore v. Ernst & Young Cayman Islands*,
   45 a.D.3d 461, 463 (1st Dep't 2007) ..................................................................... 22

*Caboara v. Babylon Cove Development, LLC*,
   54 A.D.3d 79, 83, 862 N.Y.S.2d 535, 538 (2d Dep't 2008) ................................. 21

*Cromer Fin. Ltd. v. Berger*,
   2001 U.S. Dist. LEXIS 14744, at *11-*15 (S.D.N.Y. Sept. 20, 2001) ................. 19

*DeBruyne v. Equitable Life Assurance Soc. of the U.S.*,
   920 F.2d 457 (7th Cir. 1990) ................................................................................. 10

*Donovan v. Bierwith*,
   680 F.2d 263, 272 n.2 (2d Cir. 1982) ................................................................ 3, 10

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ........................................................................................... 13

*Graham v. Barriger,*
    2009 WL 3852461 (S.D.N.Y. 2009) .............................................................. 10

*Gray & Assocs., LLC v. Speltz & Weis LLC,*
    2009 WL 416138, at *6 (N.Y. Sup. Ct., N.Y. County Feb. 2, 2009) .......... 22

*Guerrand-Hermes v. J.P. Morgan & Co.,*
    769 N.Y.S.2d 240 (1st Dep't 2003) ........................................................ 18, 19

*In re Huntington BancShares, Inc. ERISA Litig.,*
    620 F. Supp. 2d 842 (S.D. Ohio 2009) ......................................................... 10

*In re Morgan Stanley ERISA Litigation,*
    2009 WL 5947139, at *4 (S.D.N.Y. Dec. 9, 2009) ........................................ 9

*In re Unisys Sav. Plan Litig.,*
    74 F.3d 420, 436 (3d Cir. 1996) ................................................................... 11

*Int'l Fidelity Ins. Co. v. County of Rockland,*
    98 F. Supp. 2d 400, 409 (S.D.N.Y. 2000) .................................................... 22

*Jenkins v. Yager,*
    444 F.3d 916, 924 (7th Cir. 2006) ................................................................ 10

*Koch v. Dwyer,*
    1999 U.S. Dist. LEXIS 11101, at *31 (S.D.N.Y. July 22, 1999) .......... 17, 18

*Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.,*
    173 F.3d 313 (5th Cir. 1999) ........................................................................ 10

*Louros v. Kreicas,*
    367 F. Supp.2d 572, 596 (S.D.N.Y. 2005) ................................................... 20

*Lowen v. Tower Asset Management, Inc.,*
    829 F.2d 1209, 1219 (2d Cir. 1987) ................................................... 16, 17, 22

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170, 1174 (2d Cir. 1992) .................................................................. 9

*Nanopiece Techs., Inc. v. Southridge Capital Mgmt. LLC,*
    2003 WL 23052894 (S.D.N.Y. Sept. 2, 2003) ............................................. 20

*Owens v. Gaffken & Barriger Fund, LLC,*
    2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009)...........................................................20

*People v. Merkin,*
    2010 WL 936208, at *10 (N.Y. Sup. Feb. 8, 2010)...................................................17

*Sabella v. Scantek Med., Inc.,*
    2009 WL 3233703 (S.D.N.Y. Sept. 25, 2009)...........................................................21

*Scalp & Blade, Inc. v. Advest Inc.,*
    722 N.Y.S.2d 639, 640 (4th Dep't 2001)..................................................................20

*Scheuer v. Rhodes,*
    40 L.Ed.2d 90 (1974)..................................................................................................9

*Silverman v. Mutual Benefit Life Ins. Co.,*
    138 F.3d 98 (2d Cir. 1998).........................................................................................15

*Spataro v. Hirschhorn,*
    40 A.D.3d 1070, 1071 (2d Dep't 2007)...................................................................22

*Trustees of the Local 464A United Food and Commercial Workers Union*
*Pension Fund v. Wachovia Bank, N.A.,*
    2009 WL 2152074, *3 (D.N.J. July 14, 2009)..................................................passim

*Villager Pond, Inc. v. Town of Darien,*
    56 F.3d 375, 378 (2d Cir. 1995)..................................................................................9

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,*
    341 F. Supp.2d 258, 272 (S.D.N.Y. 2004)...............................................................20

*Yu v. State St. Corp.,*
    2010 WL 668645 (S.D.N.Y. Feb. 25, 2010)............................................................10

## **Statutes**

29 U.S.C. § 1104(a)(1)(B) ..........................................................................................11

29 U.S.C. §§ 1104(a)(1)(A) ..........................................................................................3

29 U.S.C. §§ 1104(a)(1)(C) ....................................................................................12, 13

29 U.S.C. § 1102...........................................................................................................3

ERISA § 405(d)(1)........................................................................................................16

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................................................. 10

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 8

Federal Rule of Civil Procedure 8 ................................................................................... 9

Federal Rule of Civil Procedure 8(a) ............................................................................. 13

**Other Authorities**

H.R. REP. NO. 93-1280 (1974) ....................................................................................12

1974 U.S.C.C.A.N. 5038, 5084 ..................................................................................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                          :
                                          :
SAINT VINCENT CATHOLIC MEDICAL            :
CENTERS and QUEENSBROOK                   :
INSURANCE LIMITED,                        :     1:09-CV-9730 (KPC)
                                          :
                    Plaintiffs,           :
                                          :
        -against-                         :
                                          :
MORGAN STANLEY INVESTMENT                 :
MANAGEMENT INC.,                          :
                    Defendant.            :
                                          :
------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Saint Vincent Catholic Medical Center ("SVCMC"), on its own behalf and as

fiduciary of the Saint Vincent Catholic Medical Centers Retirement Plan (the "Plan"), and

plaintiff Queensbrook Insurance Limited ("QIL")[1], a wholly-owned subsidiary of SVCMC, by

their undersigned counsel, respectfully submit this memorandum of law in opposition to the

motion to dismiss filed by defendant Morgan Stanley Investment Management Inc. ("MSIM")

(MSIM's motion to dismiss is hereinafter referred to as "Def. M. Dismiss").

## PRELIMINARY STATEMENT

This case arises out of MSIM's breach of its fiduciary duties under ERISA as the fixed-

income investment manager for SVCMC's pension plan, and its breach of fiduciary duties and

contractual obligations as investment manager for QIL's insurance fund.  The complaint contains

detailed allegations about MSIM's wrongful conduct, chiefly involving its over-concentration of

---

[1] SVCMC and QIL are collectively referred to herein as "Plaintiffs."

the assets it managed for Plaintiffs in high-risk, mortgage-backed securities.  The complaint makes clear that the substantial losses suffered by Plaintiffs would have been avoided if MSIM had invested the assets, as it should have, in a portfolio of fixed-income securities with a profile similar to the benchmark indices set forth in the applicable investment guidelines.

MSIM's motion to dismiss is typical of the post-*Iqbal* trend towards aggressive motions to dismiss that improperly invite the Court to prematurely weigh in on fact-intensive disputes. For example, MSIM argues that its investment choices were not unreasonable because the meltdown in the mortgage-securities market was unexpected.  This litigation position asserted by MSIM in its motion to dismiss, which it attempts to support with documents not referenced in the complaint, is contradicted by allegations in the complaint about red flags in the mortgage securities market that were, or should have been, known to MSIM.  While Plaintiffs are confident that discovery will demonstrate that MSIM acted in disregard of its fiduciary duties, the issue of whether MSIM's investment decisions were reasonable at the time is a matter best left for expert testimony.  Certainly, the issue cannot properly be adjudicated in connection with MSIM's threshold motion to dismiss.

Another theme in MSIM's motion to dismiss is that it should be relieved of its independent fiduciary duties because SVCMC and QIL were purportedly aware of, and did not object to, the mortgage-related investments in the portfolio.  This argument is misguided.  As a fiduciary – and specifically with regard to the Plan, as an ERISA fiduciary – MSIM cannot deflect its fiduciary duties onto SVCMC.  MSIM was under an obligation to offer SVCMC its professional and independent judgment with regard to Plaintiffs' fixed-income investments. As set forth in the complaint, MSIM's failure in that regard exposes it to liability under ERISA as to the SVCMC Plan, and under common law as to QIL.

MSIM's other arguments should similarly be rejected for the reasons set forth below, and the motion should be denied in its entirety.[2]

## STATEMENT OF RELEVANT FACTS[3]

MSIM served as the investment manager for the fixed-income portfolio of the Plan and SVCMC's malpractice insurance fund known as the Queensbrook Insurance Limited account (the "Insurance Fund") until MSIM's resignation in or about October 2009.  Compl. ¶¶ 1, 4, 9, 14.

### I.   *MSIM Breached Its Fiduciary Duties With Respect To The Plan*

SVCMC made an affirmative election, in 1996, to subject the Plan to ERISA, and, accordingly, the Plan is an ERISA, defined-benefit retirement plan.  *Id.* ¶ 6.  MSIM served as the Plan's investment manager, ¶¶ 9, 55, exercising authority and control over the management and disposition of the Plan's assets.  As such, MSIM was subject to the fiduciary duties imposed by ERISA.  *Id.* ¶ 15 (citing ERISA § 3 (29 U.S.C. § 1102(21))).

In discharging its duties, MSIM was required to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  Compl. ¶ 16 (citing 29 U.S.C. §§ 1104(a)(1)(A) and (B)).  The fiduciary duties of loyalty and prudence owed to the Plan by MSIM are the "highest known to the law."  Compl. ¶ 16 (citing *Donovan v. Bierwith*, 680 F.2d 263, 272 n.2 (2d Cir. 1982).  Additionally, MSIM had a specific duty to diversify the Plan's portfolio so as to minimize the risk of large losses, unless under the circumstances it was clearly not prudent to do so.  *Id.* ¶ 17.  Moreover, MSIM

---

[2] To the extent that the Court rules that any of Plaintiffs' claims should be dismissed, Plaintiffs should be afforded an opportunity to replead.

[3] The facts alleged in this section are as set forth in the Complaint dated February 16, 2010 (the "Complaint" or "Compl.").

was required to determine that the particular investment strategy was reasonably designed to further the purposes of the Plan by considering the risk of loss and the opportunity for gain associated with the investment strategy. *Id.* ¶ 18.

In furtherance of SVCMC's appointment of MSIM as investment advisor, SVCMC provided MSIM with written investment guidelines promulgated by a subcommittee of SVCMC's Board of Directors. *Id.* ¶ 20. Specifically, the investment guidelines provided that the "primary investment objective for the Pension Plan shall be preservation of principal with emphasis on long-term growth to meet the future retirement liability of the Plan. Assets shall be invested in accordance with ERISA standards." *Id.* ¶ 20. Additionally, the investment guidelines designated the Salomon Brothers Broad Bond Index as the applicable benchmark against which MSIM's performance as investment manager would be measured. *Id.* ¶ 21. The Salomon Brothers Broad Bond Index, is now known as the Citigroup Broad Investment Grade Index or the "Citigroup BIG." *Id.* ¶ 21. The Citigroup BIG is an index commonly used as a benchmark with regard to the management of large debt portfolios. *Id.* ¶ 21. Adoption of the Citigroup BIG as a benchmark signaled to MSIM that, as an ERISA fiduciary, it was required to execute a low-risk, conservative investment strategy. *Id.* ¶ 21.

MSIM deviated from the specified investment strategy by directing increasingly large amounts of the Plan's assets into high-risk investments. *Id.* ¶ 22. Among these high-risk investments were non-agency mortgage securities, which were not guaranteed by Fannie Mae or Freddie Mac (the "agencies"), because the underlying mortgages did not meet the agencies' underwriting standards and criteria. *Id.* ¶ 22, n. 2. Investments in such non-agency mortgage securities exposed the Plan to excessive risk. *Id.* ¶ 22.

The Plan experienced significant exposure to non-agency mortgage securities beginning

in the fourth quarter of 2007 and throughout 2008 and the first three quarters of 2009. *Id.* ¶ 23. Importantly, the Citigroup BIG, which served as MSIM's benchmark index, had no exposure to non-agency mortgage securities and a much more limited exposure to mortgage securities generally, yet MSIM abandoned this conservative investment profile to speculate in high-risk, mortgage-backed investments. *Id.* ¶ 23, 28.

Specifically, MSIM invested 12.6% of the Plan's fixed-income portfolio in non-agency mortgage securities during the fourth quarter of 2007, and investment in such securities exceeded 9% in all four quarters of 2008. *Id.* ¶ 23. In each of the aforementioned quarters, the Plan's overall exposure to mortgage securities in its fixed-income portfolio exceeded that of the Citigroup BIG by approximately 10%. *Id.* ¶ 24. MSIM achieved such a high concentration of exposure to mortgage securities and non-agency mortgage securities by investing more than 60% of the Plan's fixed-income portfolio in a single, proprietary fund of MSIM. *Id.* ¶ 22-26.

MSIM's excessive concentration of the Plan's assets in non-agency mortgage securities correlates with significant underperformance relative to the Citigroup BIG benchmark. *Id.* ¶ 26. In fact, for the full year of 2008, the Plan's fixed-income portfolio sustained losses of 12.0%, meanwhile the Citigroup BIG had gains of 7% during the same period. *Id.* ¶ 26. Also, in the fourth quarter of 2007, the Plan's fixed-income portfolio ended the quarter up 0.8% and the Citigroup BIG ended with a 5.7% increase for the quarter. *Id.* ¶ 26.

MSIM was required, by the investment guidelines, to manage the fixed-income portfolio by tracking and modestly exceeding the performance of the Citigroup BIG, a broad bond index with no exposure to non-agency mortgage securities and much more limited exposure to mortgage securities generally. *Id.* ¶ 28. MSIM abandoned this conservative investment profile to speculate in high-risk, mortgage-backed securities. *Id.* ¶ 28.

During the relevant time period, damages to the Plan's assets exceeded $25 million in the fixed-income portfolio managed by MSIM. *Id.* ¶ 27. Had MSIM managed the fixed-income portfolio correctly and in compliance with the stated objective and conservative investment profile, the Plan would not have incurred such losses. *Id.* ¶ 28, 33.

The high-risk investments directly exposed the Plan to the volatility of the subprime mortgage market at the same time that defaults of subprime mortgages were skyrocketing and numerous subprime lenders were facing insolvency. *Id.* ¶ 29. These high-risk investments were not suited for the Plan's conservative strategy with respect to its fixed-income portfolio. *Id.* ¶¶ 29, 30. MSIM intentionally took on risk for the Plan well in excess of the risk inherent in the Citigroup BIG index and well in excess of any normal, acceptable risk associated with the investment of a fixed-income portfolio. *Id.* ¶ 31. MSIM also failed to properly diversify the fixed-income portfolio, as required under ERISA, by disproportionately exposing the fixed-income portfolio to the risk of the mortgage securities markets. *Id.* ¶¶ 17, 32.

MSIM knew or should have known that the Plan's over exposure to high-risk, mortgage-backed securities was imprudent. *Id.* ¶ 34. Throughout 2007 and 2008, as MSIM invested the Plan's fixed-income portfolio in these types of securities, there were warning signs, including increasing defaults on the loans upon which these securities were based. *Id.* ¶ 35. Significantly, MSIM invested the Plan's fixed-income portfolio in subprime, mortgage-backed securities issued by IndyMac, Bear Stearns, Washington Mutual and Countrywide, among others. *Id.* ¶ 36.

There were many warning signs such as, in 2007, analysts recognized the exposure of Morgan Stanley to mortgages in similar securities, and predicted Morgan Stanley would write down $6 billion on the value of these mortgage-backed securities. *Id.* ¶ 37. Additionally, in IndyMac's 2007 Annual Report, its Chairman and CEO announced that, "[t]he 4th quarter of

6

2007 marked the eighth quarter of the current housing downturn (as measured by housing's contribution to GDP), making it already the fourth worst housing downturn in modern times, and many now predict that, before it turns around, it is going to be the longest and deepest since the Great Depression. . . . As a result of the housing bubble bursting, delinquencies and non-performing home loans increased rapidly in 2007." *Id.* ¶ 38.  In fact, in the 3rd quarter of 2007, IndyMac lost $202.7 million and eventually required rescue by the FDIC.  *Id.* ¶ 39.

Additional warning signs also included, the announcement by Bear Stearns, on or about July 2007, that investments in risky, mortgage-backed securities had left two of its hedge funds virtually worthless.  *Id.* ¶ 40.  Further, in the 2nd quarter of 2007, Countrywide's reported earnings fell 33 percent, to $485 million, largely because it had to write down the value of loans and other assets by $923 million, and it issued a statement saying "defaults and mortgages were rising across all mortgage categories." *Id.* ¶ 41.  Moreover, in December 2007, Standard & Poor's reduced its ratings on approximately $7 billion of Alt-A mortgage-backed securities, loans considered a step above subprime.  *Id.* ¶ 42.  The ratings were reduced as a result of a sustained surge in mortgage delinquencies during the prior five months.  *Id.* ¶ 42.

II.     ***MSIM Breached Its Fiduciary Duties With Respect To The Insurance Fund***

During the same period of time, MSIM also served as investment manager with regard to the fixed-income component of the Insurance Fund.  *Id.* ¶ 45.  MSIM acted as a fiduciary to the Insurance Fund, exercising investment discretion with respect to the Insurance Fund's fixed-income investments.  *Id.* ¶¶ 46.  MSIM was provided with investment guidelines.  *Id.* ¶¶ 47.  The investment guidelines provided that the conservative Lehman Brothers Intermediate Government Index and Lehman Government Index were the applicable benchmarks against which MSIM's performance as investment manager would be measured.  *Id.* ¶ 47.  MSIM breached its contract

and its fiduciary duties to SVCMC and QIL, by deviating from the specified strategy and directing increasingly large amounts of the Insurance Fund's assets into high-risk investments, including non-agency mortgage securities. *Id.* ¶ 48.  This investment strategy exposed the Insurance Fund to excessive risk. *Id.* ¶ 48.

This over-concentration in mortgage-backed securities was achieved by investing a majority of the Insurance Fund's fixed-income assets in a single, proprietary fund of MSIM. *Id.* ¶ 49.[4]  MSIM knew, or should have known, that this over-concentration in mortgage-backed securities was not suited to the Insurance Fund's investment objectives, as the Insurance Fund required a high-grade, liquid portfolio. *Id.* ¶¶ 50, 52.  Additionally, for the aforementioned reasons, MSIM knew, or should have known, about the risks inherent in the mortgage-backed securities to which it exposed to the QIL fixed-income portfolio. *Id.* ¶¶ 51, 37-43.

The over-concentration in mortgage-backed securities caused the Insurance Fund to incur millions of dollars in losses beginning in late 2007 and through the first three quarters of 2009. *Id.* ¶ 50.  Had MSIM managed the fixed-income portfolio in accord with the mandated investment objectives and the designated benchmark index, QIL would not have suffered from mortgage-backed securities losses. *Id.* ¶ 53.  MSIM's breach of contract and breach of fiduciary duties caused substantial losses to the Insurance Fund. *Id.* ¶¶ 69, 74.

## ARGUMENT

### I.  *MSIM's Motion Should Be Denied Because SVCMC and QIL Have Pled Facts Sufficient To Support Their Claims*

The Complaint contains more than sufficient factual allegations to survive MSIM's motion to dismiss.  In considering this motion to dismiss under Rule 12(b)(6), all factual

---

[4] MSIM misconstrues this allegation at page 23 of its memorandum of law.  In any event, MSIM concedes that, at certain points in time, mortgage-backed securities comprised as much as 15% of the Insurance Fund's fixed-income portfolio.

allegations are accepted as true, and all inferences are drawn in favor of SVCMC and QIL. *In re Morgan Stanley ERISA Litigation*, No. 07 Civ. 11285(RWS), 2009 WL 5947139, at *4 (S.D.N.Y. Dec. 9, 2009) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1992) (denying defendants' motion to dismiss). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Morgan Stanley ERISA Litigation*, at *4 (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))).

Although the pleading standard set forth in Rule 8 is a liberal standard, it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal cites and quotes omitted); *In re Morgan Stanley ERISA Litigation*, at *4. Thus, a complaint requires more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a claimant's "factual allegations must be enough to raise the right to relief above the speculative level," *Twombly*, 550 U.S. at 556, a complaint should only be dismissed if it fails to set forth "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Here, Plaintiffs have far exceeded those minimal

pleading requirements, filing a complaint replete with details sufficient to support the inference

that MSIM's wrongful conduct caused substantial losses to the Plan and the Insurance Fund.[5]

## II.   *MSIM Breached Its Fiduciary Duties Under ERISA To The Plan*

The Complaint states a claim for breach of fiduciary duty under ERISA.  The elements of

a cause of action for breach of fiduciary duty are:  (1) that MSIM was a plan fiduciary, (2) that

MSIM breached its fiduciary duties, and (3) that MSIM's breach caused harm to SVCMC.

*Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006).

### A.   *MSIM Was A Fiduciary Of The Plan*

Here, it is undisputed that a fiduciary relationship existed between MSIM and SVCMC.

St. Vincent's Hospital, a predecessor of SVCMC, entered into an investment management

agreement with Miller Anderson & Sherrerd, LLP, a predecessor of MSIM, to manage the fixed-

income assets of the Plan in October 1997. Def.'s M. Dismiss p.4.

### B.   *MSIM Breached Its Fiduciary Duties*

As an ERISA fiduciary of the Plan, MSIM was subject to the highest fiduciary duties

known to the law. *Donovan v. Bierwith*, 680 F.2d 263, 272 n.2 (2d Cir. 1982).  As explained

below, MSIM breached those duties.[6]

---

[5] MSIM's attempt to trigger Federal Rule of Civil Procedure 9(b)'s particularity requirements is unfounded, because MSIM erroneously contends that the Complaint alleges misrepresentations sounding in fraud.  To be clear, the Complaint does not plead fraud; it alleges breaches of fiduciary duties and breaches of contract claims.

[6] To support its contention that there was no breach, MSIM relies on cases that are easily distinguished.  For example, the cases cited by MSIM involve an employee stock option plan (ESOP), allegations of securities fraud, and/or were decided after discovery. *See, e.g., Yu v. State St. Corp.*, MDL No. 1945, No. 08 Civ. 8235 (RJH), 2010 WL 668645 (S.D.N.Y. Feb. 25, 2010) (non-ERISA, securities class action, in which plaintiffs allege misrepresentation in the offering documents); *Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*, 173 F.3d 313 (5th Cir. 1999) (Texas case decided after a bench trial); *Graham v. Barriger*, No. 08 Civ. 9357 (PKC), 2009 WL 3852461 (S.D.N.Y. 2009) (claims arise from violations of 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 and plaintiffs also failed to plead fraud with particularity under Rule 9(b) and the Private Securities Litigation Reform Act); *DeBruyne v. Equitable Life Assurance Soc. of the U.S.*, 920 F.2d 457 (7th Cir. 1990) (claims arise from federal securities law; decided on a motion for summary judgment after taking discovery; and plaintiffs' only allegation of imprudence was that they lost money); *In re Huntington BancShares, Inc. ERISA Litig.*, 620 F. Supp. 2d 842 (S.D. Ohio 2009) (involves an ESOP plan, so the fiduciary cannot be held liable for not diversifying assets).

i.    *Duty to Invest Prudently*

ERISA specifically requires that MSIM, as fiduciary, act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *Trustees of the Local 464A United Food and Commercial Workers Union Pension Fund v. Wachovia Bank, N.A.*, No. 09-668 (WJM), 2009 WL 2152074, *3 (D.N.J. July 14, 2009).  Whether MSIM acted prudently is determined by using "an objective standard, focusing on whether the fiduciary used appropriate methods to investigate the merits of a particular investment based on the character and aims of the plan served." *Trustees of Local 464A*, at *3 (citations omitted).  "[T]he thoroughness of a fiduciary's investigation is measured not only by the actions it took in performing it, but the facts that an adequate evaluation would have uncovered." *Id.* at *4 (citing *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 436 (3d Cir. 1996).

In *Trustees of Local 464A*, the plaintiffs made nearly identical claims to the ones SVCMC asserts in its Complaint.  In particular, they alleged that defendants, investment advisors, breached their duty to invest prudently by investing substantial portions of fixed-income portfolios in non-agency mortgage-backed securities and collateralized mortgage obligations. *Id.* at *1, 3.  Additionally, plaintiffs alleged that despite the conservative investment strategy of the fixed-income portfolios, defendants increased the fixed-income portfolios' investments in non-agency mortgage-backed securities and collateralized mortgage obligations, even when the problems in the mortgage market became known in early 2007. *Id.* at *3-4. Plaintiffs also alleged that the overconcentration of their investments in the mortgage market "led to reduced positions in conservative investments like treasuries and agency paper." *Id.* at

11

*3. The court determined that "the allegations that Defendants continued to invest in [mortgage-backed securities] and [collateralized mortgage obligations] despite problems in the mortgage and credit markets are sufficient" to state a claim that is plausible on its face. *Id.* at *4.

Here, as in *Trustees of Local 464A*, MSIM was required to execute a low-risk, conservative investment strategy. Compl. ¶ 21, 30. MSIM deviated from this specified strategy and directed increasingly large amounts of the Plan's assets into high-risk investments including non-agency mortgage securities and mortgage securities generally. Compl. ¶¶ 22, 24-25. Despite all of the warning signs, MSIM continued to invest the Plan's assets in such high-risk investments. Compl. ¶¶ 35-43. Therefore, SVCMC has stated a claim that is plausible on its face for breach of MSIM's duty to invest prudently.

### ii.     *Duty to Diversify*

ERISA requires that MSIM, as a plan fiduciary, diversify plan assets "so as to minimize the risk of large losses, unless under the circumstances, it is clearly prudent not to do so." 29 U.S.C. §§ 1104(a)(1)(C). "[T]he degree of investment concentration that violates diversification requirements cannot be stated in terms of a percentage." H.R. REP. No. 93-1280 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5084. Congress has laid out seven factors that MSIM should have considered in determining how to diversify the fixed-income assets in the Plan: "(1) the purposes of the plan; (2) the amount of the plan assets; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds or shares of stock or otherwise; (5) distribution as to geographical location; (6) distribution as to industries; and (7) the dates of maturity." *Id.*

In *Trustees of Local 464A*, plaintiffs alleged "that Defendants breached their duty to diversify by overweighting the fixed-income portfolios with" mortgage-backed securities and

12

collateralized mortgage obligations. *Trustees of Local 464A*, at \*5. In ruling that plaintiff had adequately alleged that defendants had breached their duty to diversify, the court noted: "[c]onsidering the stated aims of the Funds and the economic climate at the time, investing approximately one-third of Plaintiffs' assets in [collateralized mortgage obligations] does not appear to 'minimize the risk of large losses.'" *Id.*; *see* 29 U.S.C. § 1104(a)(1)(C). The court held that plaintiffs satisfied the notice pleading requirements of Rule 8(a), as "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Trustees of Local 464A*, at \*5 (citing *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Twombly*, 550 U.S. at 555).

Here, SVCMC provided MSIM with written investment guidelines to follow, and these guidelines provided that the "primary investment objective for the Pension Plan shall be preservation of principal with emphasis on long-term growth to meet the future retirement liability of the Plan." Compl. ¶ 20. The investment guidelines also designated the Citigroup BIG index as a benchmark for MSIM to use in determining how to invest the Plan's fixed-income assets. Compl. ¶ 21. Adoption of the Citigroup BIG index as a benchmark signaled to MSIM that it was required to execute a low-risk, conservative investment strategy. Compl. ¶ 21. As a fiduciary, MSIM had a duty to consider these investment guidelines in determining how to diversify the Plan's fixed-income assets.

In addition, MSIM had a duty to consider financial and industry conditions. It is well-alleged in the Complaint that several red flags related to the mortgage-backed securities market existed at the same time that MSIM increasingly invested the Plan's fixed-income assets in such securities. Compl. ¶¶ 35-42.

13

MSIM's breaches of its duty to diversify the Plan were egregious. MSIM invested more than 60% of the Plan's fixed-income assets in a single, proprietary fund of MSIM. Compl. ¶ 25. Beginning in the fourth quarter of 2007 and throughout 2008 and the first three quarters of 2009, the fixed-income assets managed by MSIM had considerable exposure to high-risk, non agency mortgage securities. Compl. ¶ 23. In the fourth quarter of 2007, 12.6% of the Plan's fixed-income portfolio was invested in non-agency mortgage securities, and in each of the four quarters of 2008, that percentage concentration exceeded 9%. Compl. ¶ 23. In contrast, the Citigroup BIG, which was supposed to serve as MSIM's conservative benchmark index, had no such exposure. Compl. ¶ 23. In addition, during the same quarters, the Plan's overall exposure to mortgage securities generally exceeded that of Citigroup BIG by approximately 10%. Compl. ¶ 24.[7] Accordingly, SVCMC has alleged sufficient facts to put MSIM on notice of SVCMC's claim for breach of MSIM's duty to diversify, and MSIM's motion to dismiss should be denied.

**C.    *MSIM's Mismanagement Caused The Losses Incurred By SVCMC***

Finally, the Complaint alleges that SVCMC was damaged by MSIM's breaches and by MSIM's decision to direct large amounts of the Plan's fixed-income assets into high-risk investments. Compl. ¶ 28. In particular, the losses attributable to mortgage-backed securities, total approximately $25 million. Compl. ¶ 27. Thus, MSIM is liable for the losses SVCMC incurred.

MSIM contends incorrectly that the Complaint fails to allege loss causation. In support of this argument, MSIM relies on inapposite cases not governed by ERISA or cases deciding

---

[7] MSIM argues that selection of the Citigroup BIG as a benchmark did not provide MSIM with guidance about the risk profile of the Plan's portfolio. According to MSIM, the sole purpose of the benchmark was to provide a targeted rate of return that MSIM was expected to exceed. This contention makes no sense. Following the argument to its absurd, but logical, conclusion, if SVCMC had selected the benchmark return to be an index of U.S. Treasuries, MSIM contends it could have invested the assets in highly-speculative securities in a quest to outperform. Rather, it is obvious that the Citigroup BIG was more than just an arbitrary performance benchmark; it served as a shorthand description of the risk profile appropriate for the Plan. MSIM paid it no heed.

14

summary judgment motions – not motions to dismiss.  For example, MSIM's reliance on *Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98 (2d Cir. 1998) is mistaken.  *Silverman* involves allegations that a successor fiduciary failed to take steps to remedy the fiduciary breach committed by the plan trustees prior to the appointment of the successor fiduciary.  In *Silverman*, the plan trustees embezzled $130,000 of the plan's funds.  *Id.* at 100.  The court could not determine whether the successor fiduciary had knowledge of the breach of fiduciary duty by the trustees and plaintiff "failed to make any showing that, at the time [the successor fiduciary's] duty of pursuit arose, [the trustees] had any assets that might have been recovered."  Therefore, plaintiff failed to show that the fund's loss resulted from the successor fiduciary's inaction and the court granted summary judgment in favor of the successor fiduciary.  *Id.* at 104.  No such loss causation issues are presented by this case.

In any event, Plaintiffs have specifically pled that the over-concentration in mortgage securities generally, and non-agency mortgage securities in particular, proximately caused the losses Plaintiffs now seek to recover.  If MSIM had invested the fixed-income portfolios as the benchmark indices provided, the fixed-income portfolios would not have suffered the losses they incurred.  Plaintiffs are entitled to recover the difference between what the fixed-income portfolios would have yielded if MSIM had managed the assets prudently and in compliance with the investment guidelines and the actual performance of the fixed-income portfolios.  Nothing more is required.  *See generally Trustees of the Local 464A United Food and Commercial Workers Union Pension Fund*, 2009 WL 2152074, at *4 (denying motion to dismiss where complaint alleged that over-concentration in mortgage securities, including non-agency mortgage securities, caused losses to pension plan).

15

**III.**    *As The Plan's Professional Investment Manager, MSIM Cannot Relieve Itself Of Fiduciary Duties*

As investment manager, MSIM is liable to SVCMC for the losses its fixed-income portfolio sustained as a result of MSIM's wrongful conduct. Under ERISA § 405(d)(1), once the appointment of an investment manager is made,

> the trustees cannot be held liable for any act or omission of that investment manager so far as the assets entrusted to the manager are concerned. The plain intent of this statutory structure is to allow plan trustees to delegate investment authority to a professional advisor who then becomes a fiduciary with a duty of care and duty of loyalty to the plan while the trustees' legal responsibilities regarding the wisdom of investments are correspondingly reduced.

*Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) (investment manager held liable under ERISA for wrongful investments, notwithstanding the fact that the investments at issue were mandated by the pension plan's trustees). In *Lowen*, the investment manager argued that the pension plan's trustees selected the investments that were made. The court explained that this was not a viable defense, because "as a discretionary investment manager for the Plans, [it] was under an obligation to the Plans to make a professional and independent judgment as to the wisdom of the proposed investments." *Id.* The court further stated that if an investment manager views the investments suggested by the trustees negatively, it should inform the trustees and "decline to carry out their instructions." *Id.*

Accordingly, MSIM, as the investment advisor specifically engaged to serve as the Plan's fiduciary, cannot shield itself from liability by contending, as it does in its motion to dismiss, that SVCMC authorized investments in mortgage-backed securities. Def.'s Mot. Dismiss p. 9-12. ERISA does not permit a Plan's investment manager to deflect responsibility in that way.

Moreover, whether these investments were approved by SVCMC and whether MSIM adequately advised SVCMC about the risks of making such investments are questions that are inherently factual and thus inappropriate for a motion to dismiss. *See, e.g., Koch v. Dwyer*, 98-CV-5519, 1999 U.S. Dist. LEXIS 11101, at *31 (S.D.N.Y. July 22, 1999) ("What [the ERISA fiduciary] knew about the prudence of the investment in question" is a factual question inappropriate for resolution on a motion to dismiss). Additionally, Plaintiffs anticipate that discovery will show that MSIM's communications with Plaintiffs were not the model of clarity MSIM seeks to portray; rather, due to constant personnel changes on the MSIM side, communication with Plaintiffs was erratic and confusing. Finally, as discussed above, and as explained in *Lowen*, MSIM, as investment advisor, cannot insulate itself from liability for the losses incurred by the investment decisions it made.

**IV.** ___MSIM Breached Its Fiduciary Duties To The Insurance Fund___

The Complaint states a claim for common law breach of fiduciary duty. The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary relationship, (2) breach of that duty by the defendant, and (3) damages directly caused by the defendant's misconduct. *People v. Merkin*, No. 450879/09, 2010 WL 936208, at *10 (N.Y. Sup. Feb. 8, 2010).

**A.    *MSIM Was A Fiduciary Of The Insurance Fund***

Here, it is undisputed that a fiduciary relationship existed between QIL and MSIM. MSIM and QIL entered into an investment management agreement, whereby MSIM exercised investment discretion over the fixed-income assets of QIL's Insurance Fund in July 1993. Compl. ¶¶ 45-46. Def.'s M. Dismiss p.7.

17

**B.**    *MSIM Deviated From The Investment Guidelines Provided By QIL*

As already set forth above, and as conceded in MSIM's motion to dismiss, the Insurance

Fund's assets were invested in an offshore fund that mirrored the investments of the Plan's

assets.  MSIM was provided with investment guidelines, including the designation of a

conservative index as the applicable benchmark against which MSIM's performance would be

measured.  Compl. ¶ 47.  MSIM deviated from the specified investment strategy by investing

large amounts of the Insurance Fund's assets into high-risk investments, including non-agency

mortgages.  Compl. ¶ 48.  The Insurance Fund required a high-grade, liquid portfolio, and for the

reasons already alleged above, MSIM knew, or should have known, that over-concentration in

mortgage securities was not suitable for the QIL portfolio.  Compl. ¶¶ 50, 52.

MSIM incorrectly argues that it did not breach its contractual or its fiduciary duties,

because investments in mortgage securities were part of the Insurance Fund's investment

strategy.  *See* Def.'s M. Dismiss p. 21.  As aforementioned, whether these investments were

approved by QIL is a question that is inherently factual and thus inappropriate for a motion to

dismiss.  *See, e.g., Koch v. Dwyer*, 98-CV-5519, 1999 U.S. Dist. LEXIS 11101, at *31 (S.D.N.Y.

July 22, 1999).  Nonetheless, MSIM relies on an inapposite case, *Guerrand-Hermes v. J.P.*

*Morgan & Co.*, 769 N.Y.S.2d 240 (1st Dep't 2003), to support its argument that it is not liable for

any losses because it did not deviate from the investment guidelines.  In contrast to our case, in

*Guerrand-Hermes v. J.P. Morgan & Co.*, 769 N.Y.S.2d 240 (1st Dep't 2003), plaintiffs made

express, written representations in which they acknowledged that they had extensive investment

experience, understood the risks involved with investing in emerging markets securities, and also

affirmed that defendants were not "responsible for proposing the leveraged portfolio investment

strategy" and that they had not relied on defendants in connection with the investment strategy.

*Id.* at 242. Further, the breach of contract claim in *Guerrand-Hermes* was dismissed because the fund had appreciated 40% and it was therefore unclear what damages plaintiffs suffered, if any. *Id.* Therefore, MSIM cannot rely on *Guerrand-Hermes* to assert that it did not breach its contractual or fiduciary duties with respect to the Insurance Fund.

MSIM also argues that it did not breach its contractual or fiduciary duties by failing to invest in accordance with the conservative benchmark index provided by QIL, despite knowing that this conservative benchmark index would be used to assess MSIM's performance as investment advisor. *See* Def.'s M. Dismiss p. 22. Again, MSIM relies on an inapposite case in which the investment management agreement expressly stated that the investment advisor would not be liable for any losses to the accounts unless there was a judicial determination that the losses were caused by the investment manager's gross negligence or willful misconduct. *See Assured Guaranty (UK) Ltd. v. J.P. Morgan Inv. Mgmt., Inc.*, Index No. 603755/08 (Sup. Ct., N.Y. County, Jan. 29, 2010).

### C.    *MSIM's Mismanagement Caused The Losses Incurred By QIL Through Its Insurance Fund*

Finally, the Complaint alleges that QIL was damaged by MSIM's decision to direct a significant portion of the Insurance Fund's assets into these high-risk investments. Compl.¶ 48. These high-risk investments included mortgage securities, and exposed the Insurance Fund to substantial risk. Compl.¶ 48. Thus, MSIM is liable for the losses QIL incurred by the breaches of MSIM's fiduciary duties.

### V.    *The Martin Act Does Not Preempt QIL's Common-Law Breach Of Fiduciary and Breach of Contract Claims*

MSIM incorrectly contends that QIL's breach of fiduciary duty claim is barred by the Martin Act. In so contending, MSIM ignores the line of cases holding to the contrary that QIL's

breach of fiduciary duty claim would not be preempted by the Martin Act. *See, e.g., Scalp &*

*Blade, Inc. v. Advest Inc.*, 281 A.D.2d 882, 722 N.Y.S.2d 639, 640 (4th Dep't 2001) (refusing to

dismiss claims for breach of fiduciary duty on preemption grounds); *Cromer Fin. Ltd. v. Berger*,

2001 U.S. Dist. LEXIS 14744, at *11-*15 (S.D.N.Y. Sept. 20, 2001) (same); *Louros v. Kreicas*,

367 F. Supp.2d 572, 596 (S.D.N.Y. 2005) (breach of fiduciary duty claim does not allege

deception, deliberate or otherwise, so claim not pre-empted by Martin Act); *Xpedior Creditor*

*Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp.2d 258, 272 (S.D.N.Y. 2004) (breach

of fiduciary duty claim not pre-empted by Martin Act because claim is not premised on

violations of securities law, whether state or federal; instead, the lawsuit involves a contract

dispute and is not a securities action).  Those cases are particularly on point here because QIL's

claims do not involve misrepresentation and, thus, as a policy matter the Martin Act should not

have a preemptive effect.

     In contrast, MSIM relies on inapposite cases to further its argument that QIL's breach of

fiduciary duty claim is barred by the Martin Act.  *See Nanopiece Techs., Inc. v. Southridge*

*Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2003 WL 23052894 (S.D.N.Y. Sept. 2, 2003)

(case involves a claim of breach of fiduciary duty arising from a stock purchase agreement in

which the fiduciary issued over 3 million shares of stock to another company); *Owens v. Gaffken*

*& Barriger Fund, LLC*, No. 08 Civ. 8414 (PKC), 2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009)

(does not involve a claim of breach of fiduciary duty; Martin Act precludes claims of unjust

enrichment and conversion because they sound in fraud or deception); *Abbey v. 3F Therapeutics*

*Inc.*, No. 06 Civ. 409 (KMW), 2009 WL 4333819 (S.D.N.Y. Dec. 2, 2009) (does not involve a

claim of breach of fiduciary duty; Martin Act precludes negligent misrepresentation claim);

*Assured Guaranty (UK) Ltd. v. J.P. Morgan Inv. Mgmt., Inc.*, Index No. 603755/08, n.9 (Sup. Ct.

N.Y. County, Jan. 29, 2010) (court determined that plaintiff's "breach of fiduciary duty and gross negligence claims are preempted by the Martin Act because plaintiff has clearly alleged concealment and deception"); *Sabella v. Scantek Med., Inc.*, No. 08 Civ. 453 (CM) (HBP), 2009 WL 3233703 (S.D.N.Y. Sept. 25, 2009) (defendant's alleged representations and breach of fiduciary duty were predicated on securities fraud and therefore preempted by the Martin Act); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009) (class action to recover losses arising from the liquidation of notes issued by a structured investment vehicle). Thus, MSIM's reliance on the aforementioned cases to argue that QIL's breach of fiduciary duty claim is preempted by the Martin Act is not persuasive.[8]

**VI.**     ***SVCMC's Claim Is Not Barred Due To Alleged Failure To Object In Writing To Account Statements Supplied By MSIM***

MSIM contends, without supporting authority, that SVCMC has waived its right to bring an ERISA claim because the investment management agreement provides that MSIM will be released from liability for any transaction reported in a quarterly account statement, unless SVCMC objects within 90 days of receipt of the statement. On its face, this contract provision does not apply to, and thus does not bar, SVCMC's ERISA claim. SVCMC is not challenging any particular "transaction" in its quarterly account statements. Rather, SVCMC contends that MSIM mismanaged the portfolio as a whole in a manner that was antithetical to its fiduciary duties. *See, e.g., Anastasi v. Emanuel*, 270 A.D.2d 37, 37 (1st Dep't 2000) (refusing to dismiss claims that "broker's investment choices were excessively risky" and distinguishing cases that dismissed claims for failure to object to unauthorized trading within contractually-mandated periods). The conclusion that MSIM cannot evade its fiduciary responsibilities by hiding behind

---

[8] It also should be noted that QIL's common-law breach of contract claim is "neither abrogated nor supplanted by the Martin Act." *Caboara v. Babylon Cove Development, LLC*, 54 A.D.3d 79, 83, 862 N.Y.S.2d 535, 538 (2d Dep't 2008) (reversing lower court's dismissal of plaintiffs' common-law fraud and breach of contract claims). MSIM does not contend that it is.

21

this inapplicable contractual limitation is further reinforced by the general principle that such a limitation must be construed against MSIM, and can only be enforced if it clearly and unambiguously bars the claim at issue. *See Int'l Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 409 (S.D.N.Y. 2000); *Spataro v. Hirschhorn*, 40 A.D.3d 1070, 1071 (2d Dep't 2007). That is not the case here. Further, as aforementioned, MSIM cannot relieve itself of its fiduciary duties. *See supra* Part III. "Under ERISA, an investment manager's fiduciary obligations may not be turned on and off like running water." *Lowen*, 829 F.2d at 1219. Hence, MSIM's contention is not persuasive and this argument should be rejected.

**VII.** *QIL's Breach Of Fiduciary Duty Claim Is Not Duplicative Of Its Breach Of Contract Claim Nor Is It Barred By The Economic Loss Doctrine*

MSIM contends incorrectly that QIL's breach of fiduciary duty claim is duplicative of its breach of contract claim. QIL's breach of fiduciary duty claim arises from a source independent from the investment management agreement and guidelines. The relationship between QIL and MSIM, as QIL's investment advisor, itself gives rise to fiduciary duties. As a matter of well-established policy, investment advisors, like MSIM, are fiduciaries who "may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Bullmore v. Ernst & Young Cayman Islands*, 45 a.D.3d 461, 463 (1st Dep't 2007) (denying motion to dismiss breach of fiduciary duty claim against hedge fund manager); *Gray & Assocs., LLC v. Speltz & Weis LLC*, No. 150446/2007, 2009 WL 416138, at *6 (N.Y. Sup. Ct., N.Y. County Feb. 2, 2009) (denying motion to dismiss fiduciary duty claim against financial advisor as duplicative of contract claim).

While the court in *Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270 (3d Dep't 2006), a case cited by MSIM, dismissed the fiduciary duty claim as duplicative of the breach of contract claim, the court recognized that where the parties " 'created a relationship of higher trust

than would arise from [their contracts] alone,' so as to permit a cause of action for breach of

fiduciary duty independent of the contractual duties" plaintiff's could allege both a breach of

fiduciary duty and a breach of contract. *Id.* at 272-73 (citations omitted). Here, the relationship

between MSIM and QIL goes beyond a contractual relationship and is one involving such a

higher level of trust.

MSIM also contends incorrectly that QIL's breach of fiduciary duty claim is barred by

the economic loss doctrine. In fact, however, this court has held that "[c]laims for breach of

fiduciary duty are also not barred by the economic loss doctrine because such claims are rooted

in the substantive laws of agency, contract and equity, rather than tort." *Better Benefits, Inc. v.*

*Protective Life Ins. Co.*, No. 03 Civ. 2820(LAP), 2004 WL 633730 (S.D.N.Y. Mar. 30, 2004)

(citation omitted). MSIM relies on *Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*, 620

N.Y.S.2d 196 (4th Dep't 1994), an inapposite case, to support its contention. In *Bristol-Myers*, a

pharmaceutical manufacturer brought an action against the installer of an electrical transformer

for damages resulting from the transformer's failure. The court held that the pharmaceutical

manufacturer could recover contractual damages for economic loss, but could not recover tort

damages for negligence because "[w]hether a product fails to perform as promised due to

negligence in the manufacturing process or in the installation process, recovery in negligence is

unavailable for purely economic loss." *Id.* at 199. Here, QIL does not allege negligence.

Hence, MSIM's contention is not persuasive and thus its argument that the breach of fiduciary

duty claim should be dismissed should be rejected.

## VIII.   *Factual Issues Cannot Be Determined On A Motion To Dismiss*

The affidavit of Joseph A. Braccia in support of MSIM's motion to dismiss (hereinafter,

"Braccia Aff.") refers to documents outside the Complaint that should not be considered on this

motion to dismiss. In any event, the attached documents raise a host of critical factual issues that cannot be determined on a motion to dismiss. Rather than support MSIM's contention that Plaintiffs' Complaint should be dismissed, the affidavit demonstrates areas as to which discovery is needed to properly adjudicate Plaintiffs' allegations. Specifically, the following are examples of factual issues raised by the materials attached to the Braccia Aff.:

- "The objectives for all the investment assets shall be accomplished utilizing a strategy of fixed income, equities and cash equivalents **in a mix that is appropriate for each Plan's needs**." Braccia Aff. Ex. 2, at 1 (emphasis added).

- "The total return for each fixed income investment manager **is expected to exceed the total return of the designated fixed income benchmark** (Salomon Brothers Broad Bond Index for the Pension and Endowment Plans, Lehman Brothers Intermediate GV/CP Bond Index for the Malpractice Plan and Salomon 2 Year Treasury Index for the Funded Depreciation Plan)." Braccia Aff. Ex. 2, at 3 (emphasis added).

- "Each fixed income **investment manager will be evaluated versus a fixed income investment manager universe of similar time horizon** (e.g., short-term, intermediate-term) and is expected to rank above the median of that universe." *Id.* (emphasis added).

- "It is **expected that a Portfolio's primary emphasis will be in mortgage securities issued by the various government-related organizations**. However, a portfolio may invest, without limit, in mortgage securities issued by private issuers **when the Adviser deems that the quality of the investment, the quality of the issuer, and market conditions warrant such investments**. Securities issued by private issuers will be rated investment grade by Moody's Investors Service, Inc. ("Moody's") or Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies, Inc. ("Standard & Poor's"),

24

or **be deemed by the Adviser to be of comparable investment quality**." Braccia Ex. 7, at 12 (emphasis added).

Each of the above quotes emphasizes the extent to which MSIM was vested with discretionary investment authority over Plaintiffs' portfolio and charged with exercising independent, professional judgment with regard to those accounts. MSIM's failure to exercise such professional judgment consistent with its fiduciary and contractual duties is amply alleged in the Complaint. Accordingly, the motion to dismiss should be denied and discovery should proceed forthwith.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request entry of an order denying MSIM's motion to dismiss and granting such other relief as the Court deems just and proper.

Dated: New York, New York
       March 25, 2010

                               BUTZEL LONG,
                               a professional corporation

                               By: /s/ Eric B. Fisher
                                   Eric B. Fisher
                               380 Madison Avenue
                               New York, New York 10017
                               Telephone:  (212) 374-5359
                               Facsimile:  (212) 818-0494
                               fishere@butzel.com

                               *Attorneys for Plaintiffs*