UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAINT VINCENT CATHOLIC MEDICAL CENTERS and QUEENSBROOK INSURANCE LIMITED,<br><br>                    Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY INVESTMENT MANAGEMENT INC.,<br><br>                    Defendant. | **ORAL ARGUMENT REQUESTED**<br><br>09 Civ. 9730 (PKC) |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
212-373-3000 (Phone)
212-757-3990 (Fax)

*Attorneys for Defendant Morgan Stanley
Investment Management, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .............................................................................................................. 2

I.  SVCMC DOES NOT ADEQUATELY PLEAD A VIOLATION OF ERISA ................. 2

  A.  SVCMC Does Not Adequately Plead That MSIM Violated ERISA's Duty
    Of Care With Respect to the Pension Plan ......................................................... 2

    1.  MSIM Followed the Investment Strategy Set Forth in The
      Investment Management Agreement and Guidelines ................................ 2

    2.  SVCMC Fails Adequately To Allege That MSIM Otherwise
      Breached Its Duty of Care Under ERISA .................................................. 5

  B.  SVCMC Does Not Adequately Plead a Failure To Diversify Pension Plan
    Investments ......................................................................................................... 8

II.  QIL DOES NOT ADEQUATELY PLEAD A VIOLATION OF MSIM'S
  CONTRACTUAL OR COMMON LAW FIDUCIARY DUTIES .................................... 9

III.  SVCMC'S CLAIM SHOULD BE DISMISSED FOR OTHER, INDEPENDENT
  REASONS ................................................................................................................. 11

  A.  SVCMC Does Not Adequately Allege Proximate Causation .............................. 11

  B.  SVCMC's Claim Is Barred Because It Failed To Object in Writing
    To the Transactions Within the Required Time Period ...................................... 12

IV.  QIL'S COMMON LAW CLAIMS SHOULD BE DISMISSED FOR OTHER,
  INDEPENDENT REASONS ......................................................................................... 13

  A.  QIL Does Not Adequately Allege Proximate Causation .................................... 13

  B.  QIL's Common Law Breach of Fiduciary Duty Claim Is Preempted By
    New York State's Martin Act ............................................................................. 13

  C.  QIL's Common Law Breach of Fiduciary Duty Claim Should Be
    Dismissed as Duplicative of the Breach of Contract Claim ............................... 15

  D.  QIL's Fiduciary Breach Claim Is Barred by the Economic Loss Doctrine ......... 16

**Page**

V.      MSIM'S OPENING BRIEF DOES NOT RAISE QUESTIONS OF FACT ...................17

        A.      The Braccia Exhibits Are Properly Considered on This Motion .........................17

        B.      Plaintiffs' Allegations Do Not Create Any Factual Questions............................19

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................ 14

*Ambac Assurance UK Ltd.* v. *J.P. Morgan Investment Management. Inc.*,
  Index No. 650259/09 (Sup. Ct., N.Y. County, Mar. 24, 2010) ..................... 4, 7, 9, 11, 14, 15

*Am. Commc'ns Ass'n, Local 10, I.B.T.* v. *Ret. Plan for Employees of RCA Corp. & Subsidiary Cos.*,
  488 F. Supp. 479 (S.D.N.Y. 1980) ...................................................................... 8

*Ashcroft* v. *Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................ 8

*Ashland Inc.* v. *Morgan Stanley & Co.*,
  --- F. Supp. 2d ----, No. 09 Civ. 5415 (RPP), 2010 WL 1253932
  (S.D.N.Y. Mar. 30, 2010) ................................................................................ 13-14

*Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Inv. Mgmt., Inc.*,
  Index No. 603755/08 (Sup. Ct., N.Y. County, Jan. 29, 2010) ..................... 10-11, 14-15

*ATSI Commc'ns Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................. 8

*Barron* v. *Igolnikov*,
  No. 09 Civ. 4471 (TPG), 2010 WL 882890 (Mar. 10, 2010) .............................. 14

*In re Bayou Hedge Fund Litig.*,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007) .................................................................. 14

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 8

*Better Benefits, Inc.* v. *Protective Life Ins. Co.*,
  No. 03 Civ. 2820 (LAP), 2004 WL 633730 (S.D.N.Y. Mar. 30, 2004) ............... 16

*Brooks* v. *Key Trust Co. Nat'l Ass'n*,
  809 N.Y.S.2d 270 (3d Dep't 2006) .................................................................... 15-16

*Bullmore* v. *Ernst & Young Cayman Islands*,
  846 N.Y.S.2d 145 (1st Dep't 2007) ..................................................................... 16

*Carmania Corp., N.V.* v. *Hambrecht Terrell Int'l*,
  705 F. Supp. 936 (S.D.N.Y. 1989) ...................................................................... 16

**Page(s)**

*Catton* v. *Def. Tech. Sys., Inc.*,
  No. 05 Civ. 6954 (SAS), 2006 WL 27470 (S.D.N.Y. Jan. 3, 2006)....................................13

*In re Citigroup ERISA Litig.*,
  No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ...........................................5

*City of Omaha* v. *CBS Corp.*,
  No. 08 Civ. 10816 (PKC), 2010 WL 1029290 (S.D.N.Y. Mar. 16, 2010) .............................7

*Colliton* v. *Cravath, Swaine & Moore, LLP*,
  No. 08 Civ. 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)........................11-12

*Cortec Indus. Inc.* v. *Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) .................................................................................................19

*Cromer Fin. Ltd.* v. *Berger*,
  No. 00 Civ. 2498 (DLC), 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001).............................14

*Fisher* v. *JP Morgan Chase & Co.*,
  --- F. Supp. 2d ----, No. 03 Civ. 3252 (SHS), 2010 WL 1257345
  (S.D.N.Y. Mar. 31, 2010)................................................................................................5, 8

*Gordon Partners* v. *Blumenthal*,
  293 F. App'x 815 (2d Cir. 2008) .......................................................................................13

*Gray & Assocs., LLC* v. *Speltz & Weiss, LLC*,
  No. 150446/2007, 2009 WL 416138 (Sup. Ct., N.Y. County Feb. 2, 2009)........................16

*Guerrand-Hermès* v. *J.P. Morgan & Co.*,
  769 N.Y.S.2d 240 (1st Dep't 2003) ...................................................................................10

*In re Huntington Bancshares, Inc. ERISA Litig.*,
  620 F. Supp. 2d 842 (S.D. Ohio 2009)..................................................................................7

*I. Meyer Pincus & Assocs., P.C.* v. *Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991) ...............................................................................................18

*Int'l Audio Text Network, Inc.* v. *Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ...................................................................................................18

*Koch* v. *Dwyer*,
  98-CV-5519, 1999 U.S. Dist. LEXIS 11101 (S.D.N.Y. July 22, 1999) ...............................19

*Kramer* v. *Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ..........................................................................................17, 18

*Laborers Nat'l Pension Fund* v. *N. Trust Quantitative Advisors, Inc.*,
  173 F.3d 313 (5th Cir. 1999) ................................................................................................9

**Page(s)**

*Lentell* v. *Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ...................................................................... 17

*Levy* v. *Southbrook Int'l Invs., Ltd.*,
    263 F.3d 10 (2d Cir. 2001) ........................................................................ 18

*Louros* v. *Kreicas*,
    367 F. Supp. 2d 572 (S.D.N.Y. 2005) ...................................................... 14

*Lowen* v. *Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987) ..................................................................... 4

*Marcus* v. *Frome*,
    329 F. Supp. 2d 464 (S.D.N.Y. 2004) ...................................................... 14

*Meridian Horizon Fund, LP* v. *Tremont Group Holdings, Inc.*,
    No. 09 Civ. 3708 (TPG), 2010 WL 1257567 (S.D.N.Y. Mar. 31, 2010) ........................ 13, 14

*In re Merrill Lynch & Co.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ...................................................... 17

*Nanopierce Techs., Inc.* v. *Southridge Capital Mgmt. LLC*,
    No. 02 Civ. 0767 (LBS), 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ............................. 14

*NM Homes, Inc.* v. *JP Morgan Chase Bank, N.A.*,
    No. 08 Civ. 7679 (PAC) (S.D.N.Y. Mar. 30, 2010) ....................................... 4, 6-7, 13, 14-15

*In re Parmalat Sec. Litig.*,
    501 F. Supp. 2d 560 (S.D.N.Y. 2007) ...................................................... 13

*Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec., LLC*,
    591 F. Supp. 2d 586 (S.D.N.Y. 2008) ...................................................... 13

*In re Philip Morris Sec. Litig.*,
    872 F. Supp. 97 (S.D.N.Y. 1995) ............................................................. 20

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*,
    --- F. Supp. 2d ----, No. 08 Civ. 8143 (WHP), 2010 WL 961596
    (S.D.N.Y. Mar. 17, 2010) ............................................................................ 7

*Prescient Acquisition Group, Inc.* v. *MJ Publ'g Trust*,
    No. 05 Civ. 6298 (PKC), 2006 WL 2136293 (S.D.N.Y. July 31, 2006) ............................. 18

*Pro Bono Invs., Inc.* v. *Gerry*,
    No. 03 Civ. 4347 (JGK), 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ............................. 14

**Page(s)**

*San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996) .................................................................................... 20

*Scalp & Blade, Inc.* v. *Advest, Inc.*,
  722 N.Y.S.2d 639 (4th Dep't 2001) ....................................................................... 14

*Sedona Corp.* v. *Ladenburg Thalmann & Co.*,
  No. 03 Civ. 3120 (LTS), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ................ 14

*Silverman* v. *Mutual Benefit Life Ins. Co.*,
  138 F.3d 98 (2d Cir. 1998) .................................................................................... 11

*Stephenson* v. *Citco Group Ltd.*,
  --- F. Supp. 2d ----, No. 09 Civ. 00716 (RJH), 2010 WL 1244007
  (S.D.N.Y. Apr. 1, 2010) ........................................................................................ 13

*Stuto* v. *Fleishman*,
  164 F.3d 820 (2d Cir. 1999) .................................................................................. 18

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
  --- F. Supp. 2d ----, Nos. 09 MD 2052, 08 Civ. 11117 (TPG), 2010 WL 1257580
  (S.D.N.Y. Mar. 30, 2010) ................................................................................ 13, 14

*Trustees of the Local 464A United Food & Commercial Workers Pension Fund* v.
  *Wachovia Bank, N.A.*,
  Civ. No. 09-668 (WJM), 2009 WL 2152074
  (D.N.J. July 14, 2009) .................................................................................. 5, 7, 8, 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
  634 F. Supp. 2d 352 (S.D.N.Y. 2009) ................................................................... 11

*Vladimir* v. *Cowperthwait*,
  839 N.Y.S.2d 761 (1st Dep't 2007) ....................................................................... 10

*Xpedior Credit Trust* v. *Credit Suisse First Boston (USA) Inc.*,
  341 F. Supp. 2d 258 (S.D.N.Y. 2004) ................................................................... 14

**STATUTES**

29 U.S.C. § 1104(a)(1) ............................................................................................ 5, 7

N.Y. Gen. Bus. Law, Art. 23-A, § 352 *et seq* ............................................................ 13

**Page(s)**

### OTHER AUTHORITIES

Fed. R. Evid. 201(b)(2) ............................................................................................... 18

Fed. R. Civ. P. 12(b)(6)....................................................................................... 1, 17, 19

Fed. R. Civ. P. 56.................................................................................................... 19

Defendant Morgan Stanley Investment Management, Inc. ("MSIM") respectfully submits this reply memorandum of law in further support of its motion to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In their opposition brief, Saint Vincent Catholic Medical Centers ("SVCMC") and Queensbrook Insurance Limited ("QIL") do not dispute that:

- Consistent with the relevant investment management agreements and investment guidelines, the investments of which they complain were held through pooled investment vehicles known as the Advisory Mortgage Portfolio ("AMP") and Offshore Advisory Mortgage Portfolio ("OAMP"), respectively.  (*See* Def. Mem. at 10, 21.)

- Investment account documents manifest plaintiffs' assent to invest in these specific portfolios.  (*See id*. at 10-11, 21.)[1]

- Both prior and subsequent to investing in the AMP and OAMP on plaintiffs' behalf, MSIM provided plaintiffs with numerous documents (a) disclosing that those portfolios held non-agency mortgage securities; (b) warning of the risks of investing in such securities; and (c) informing plaintiffs how much of their assets were invested in the AMP and OAMP and in non-agency mortgage-backed securities.  (*See id*. at 11-12, 21.)

Thus, to the extent plaintiffs complain that MSIM breached contractual or fiduciary duties by deviating from the investment agreements or guidelines or by failing to disclose the risks of investments in mortgage-backed securities, plaintiffs have failed to state a claim.  Indeed, despite the complaint's reliance on the investment guidelines to define the parameters within which MSIM was supposed to operate, *plaintiffs fail to identify any guideline MSIM violated* by investing in the AMP and OAMP.  (*See id.* at 13, 22.)

Moreover, although plaintiffs challenge MSIM's decisions to purchase and hold mortgage-backed securities, plaintiffs have offered no response to MSIM's showing that plaintiffs have failed to make any allegations about the process MSIM followed in purchasing

---

[1]    Although plaintiffs assert that whether they approved the investments is a "factual" question (Pl. Mem. at 17, 18), they do not dispute the authenticity of any of the account documents referenced in MSIM's opening brief.

and holding mortgage securities. (*See id.* at 15, 24.) And although MSIM demonstrated that plaintiffs have also failed to allege that the "warning signs" cited in the complaint would have put a reasonable investment manager on notice of problems with the non-agency mortgage-backed securities held in their accounts—and therefore did not state a claim about the prudence of investing in or holding those securities—plaintiffs utterly ignore those arguments as well. (*See id.* at 15-17, 24.) Instead, plaintiffs recycle the allegations of the complaint—insufficient for the reasons stated above and in MSIM's opening brief—and set forth irrelevant and unpersuasive bases for distinguishing cases MSIM cites. Plaintiffs' claims should be dismissed.

## ARGUMENT

## I.

## SVCMC DOES NOT ADEQUATELY PLEAD A VIOLATION OF ERISA

**A.**      **SVCMC Does Not Adequately Plead That MSIM Violated ERISA's Duty of Care With Respect to the Pension Plan**

SVCMC misconstrues or fails to respond to MSIM's arguments that it did not breach any duty of prudence.

### 1.      *MSIM Followed the Investment Strategy Set Forth In The Investment Management Agreement and Guidelines*

SVCMC does not respond to MSIM's showing that the investments complained of consisted of shares of the AMP (Def. Mem. at 10); that the investment guidelines, as supplemented by SVCMC's specific authorization to invest in mortgage-backed securities through the AMP, did not cap the level of investment in AMP shares or non-agency mortgage-backed securities permissible for the pension fund (*id.* at 11); and that MSIM complied at all times with the credit ratings, effective duration, and other concrete restraints imposed by the thirteen "Investment Manager Restrictions" in the guidelines (*id.* at 13). Nor does SVCMC dispute that it received AMP prospectuses and Statements of Additional Information ("SAIs")

stating that the AMP "*may invest, without limit*," in mortgage-backed securities "*issued by private issuers*," and disclosing the risks of such investments (*id*. at 11-12); AMP shareholder reports that disclosed and quantified all of the AMP's holdings in such securities (*id*. at 12); and monthly account statements showing that a majority of the pension fund's assets were invested in the AMP and, after mid-2008, disclosing the specific allocation of pension fund assets to nine types of mortgage securities, including three types of non-agency mortgage securities (*id*.).[2] SVCMC's contention that MSIM's mortgage-backed investments "deviated from the [pension fund's] specified strategy" is therefore meritless.

Dissatisfied with the language of the investment management agreement and guidelines, SVCMC now seeks to re-write those documents by arguing that the guidelines required MSIM "to execute a low-risk, conservative investment strategy" (Pl. Mem. at 12).  But the guidelines *contain no such language*.  SVCMC also contends that the adoption of the Citigroup Broad Investment Grade Index as the pension fund's performance benchmark "signaled to MSIM" that it was "required to execute" a conservative strategy (*id*. at 4).  But had SVCMC intended that MSIM follow a conservative strategy "signaled" by the benchmark, it could have written that into the guidelines.  It did not do so.

SVCMC also fails to respond to MSIM's argument that it was not hired to "track" the benchmark by replicating its risk profile or investing only in the types and amounts of securities making up the benchmark, and could not have exceeded the benchmark's returns, as MSIM was retained to do, merely by copying the securities comprising the benchmark.  (*See* Def. Mem. at 12-14.)

---

[2]   Although plaintiffs state that they "anticipate that discovery will show that MSIM's communications . . . were not the model of clarity MSIM seeks to portray" (Pl. Mem. at 17), the amended complaint does not identify a single example of a confusing communication.  Moreover, plaintiffs do not need discovery to allege their own state of mind, *i.e.*, that they were confused by MSIM's communications.

Recent decisions, including two issued since MSIM submitted its moving brief, have dismissed similar claims on the pleadings. In *NM Homes, Inc.* v. *JP Morgan Chase Bank, N.A.*, No. 08 Civ. 7679 (PAC) (S.D.N.Y. Mar. 30, 2010) (attached hereto as Exhibit A), Judge Crotty dismissed a complaint alleging, *inter alia*, that defendant had purchased securities unsuitable for plaintiff's account, where, as here, the guidelines and account documents allowed and "expressly contemplate[d]" investment in the securities in question and defendant informed plaintiff of its investment strategy and all investments. *See* Op. at 16, 17. Similarly, *Ambac Assurance UK Ltd.* v. *J.P. Morgan Investment Management Inc.*, Index No. 650259/09 (Sup. Ct., N.Y. County, Mar. 24, 2010) (attached hereto as Exhibit B) dismissed a complaint where it was "undisputed that defendant invested [plaintiff's] assets precisely in the type of securities provided for, and agreed upon by the parties, in the Investment Guidelines." *See* Op. at 7.

Citing *Lowen* v. *Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987), SVCMC mistakenly insists that MSIM is attempting to "shield itself from liability" on the ground that "SVCMC authorized investments in mortgage-backed securities." (Pl. Mem. at 16.) SVCMC's reliance on *Lowen* is misplaced. In *Lowen*, defendants tried to justify clear violations of ERISA's prohibition of fiduciary self-dealing by claiming plaintiffs ordered the transactions.[3] By contrast, MSIM does not argue that SVCMC's authorization would preclude liability for *any* violation of ERISA arising out of mortgage-backed investments. Rather, MSIM argues that SVCMC cannot claim that MSIM violated ERISA by "*deviat[ing] from [the pension plan's] specified strategy*" (Pl. Mem. at 12 (emphasis added)) when the documents specifying that

---

[3] The investment manager, two related entities, and their controlling shareholders "caus[ed] the investment of approximately $30 million of [plaintiffs'] assets in companies in which one or more defendants owned an interest and/or from which one or more defendants received fees or other consideration." 829 F.2d at 1212-13.

strategy—the same documents on which SVCMC relies[4]—unambiguously authorized the investments alleged to constitute the deviation.  Indeed, ERISA requires fiduciaries to manage plan assets "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]."  *See* 29 U.S.C. § 1104(a)(1)(D).  Had MSIM deviated from the plan documents by divesting plan assets from the AMP, and had the AMP's value increased, MSIM could have been sued for *not following* those plan documents.  *See, e.g.*, *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at *13 (S.D.N.Y. Aug. 31, 2009) ("under plaintiffs' interpretation of ERISA, fiduciaries would risk liability whether or not they decided to override the plans' terms").[5]

### 2.   SVCMC Fails Adequately To Allege That MSIM Otherwise Breached Its Duty of Care Under ERISA

SVCMC incorrectly argues that MSIM's investments in mortgage-backed securities violated ERISA's standard of care, regardless of whether they were authorized or complied with the guidelines.  Quoting *Trustees of the Local 464A United Food & Commercial Workers Pension Fund* v. *Wachovia Bank, N.A.*, Civ. No. 09-668 (WJM), 2009 WL 2152074 (D.N.J. July 14, 2009), SVCMC contends that ERISA focuses on "whether the fiduciary used appropriate methods to investigate the merits of a particular investment based on the character and aims of the plan served."  (Pl. Mem. at 11.)  But, as MSIM pointed out in its opening brief (*see* Def. Mem. at 15), the complaint makes *no factual allegations* about MSIM's investment processes.  Similarly, while SVCMC cites case law stating that a fiduciary's investigation is

---

[4]   As discussed more fully in Part V below, SVCMC's use of these documents in framing the complaint refutes its argument that the Court may not consider them in deciding the instant motion (*see* Pl. Mem. at 23-24).

[5]   *Cf. Fisher* v. *JP Morgan Chase & Co.*, --- F. Supp. 2d. ---, No. 03 Civ. 3252 (SHS), 2010 WL 1257345, at *8-9 (S.D.N.Y. Mar. 31, 2010) (even where ERISA plan documents did not *require* investment in employer stock, plaintiffs did not "state a plausible claim that reasonable fiduciaries would have considered themselves bound to divest the [p]lans" of the stock by alleging that the stock lost 55% of its value).

assessed in light of the "facts that an adequate evaluation would have uncovered" (Pl. Mem. at 11 (internal quotation marks omitted)), SVCMC has not alleged *any facts* about the prudence of the pension fund's mortgage-backed investments that such an investigation would have revealed.

SVCMC ignores MSIM's argument that the complaint fails to plead nonconclusory facts indicating MSIM "knew or should have known" (*id.* at 6) that the *specific mortgage-backed investments* made for the pension fund were improper. (*See* Def. Mem. at 15-17.) While SVCMC emphasizes MSIM's supposed over-investment in non-agency mortgage-backed securities, the complaint does not allege that the "warning signs" it identifies, such as losses suffered by IndyMac and other issuers of some of the securities in the portfolio, and the collapse of two Bear Stearns hedge funds, have anything to do with non-agency mortgage-backed securities in particular. And SVCMC makes no response to MSIM's arguments that (a) the value of a mortgage-backed security depends on the characteristics of the underlying mortgage pool, rather than on the financials of the security's issuer, and (b) there is no reason to infer that the pension fund's non-agency mortgage-backed securities were likely to decline in value simply because of losses and credit downgrades affecting a fraction of the nearly $6-*trillion* overall market for residential mortgage-backed securities.

These deficiencies are fatal. In its opening brief, MSIM cited decisions dismissing complaints which alleged that defendants in the financial services industry knew or should have known about the risks of investing in mortgage-backed securities generally but which failed to allege specifics about plaintiffs' particular investments. (*See id.* at 17-18.) Since then, additional courts have dismissed such claims. In *NM Homes*, for example, the complaint (like the complaint here) cited the July 2007 collapse of two Bear Stearns hedge funds and contemporaneous credit ratings downgrades of various mortgage-backed securities to allege that

defendant was "aware of the risks of investing in the subprime market." Op. at 4-7. Judge Crotty rejected plaintiff's claim that, based on these events, defendant "knew or should have known that the value of [plaintiff's subprime-linked] securities would decline." *Id.* at 17.[6]

        SVCMC's efforts to distinguish similar cases cited by MSIM on the ground that some of them involve "allegations of securities fraud" (Pl. Mem. at 10 n.6) are unavailing. The decisions stand for a proposition, applicable under ERISA as well as the securities laws, that plaintiffs cannot survive a motion to dismiss simply by alleging that defendants "knew or should have known the extreme risk of subprime lending" because of generalized developments such as articles in the popular and financial press in 2007 and 2008. *E.g.*, *In re Huntington Bancshares, Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 852-53 (S.D. Ohio 2009) (internal quotation marks omitted); *see also City of Omaha* v. *CBS Corp.*, No. 08 Civ. 10816 (PKC), 2010 WL 1029290, at *12 (S.D.N.Y. Mar. 16, 2010) (allegations that are "conclusory, and retrospective, . . . fail[] to state a claim" (citations omitted)).[7]

        To the extent that *Local 464A*, a district court decision from outside this Circuit, can be read to state a different standard, MSIM respectfully submits that this decision is contrary to the weight of authority and unpersuasive. Given the size and complexity of the nearly $6-

---

[6]  *See also Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*, --- F. Supp. 2d ----, No. 08 Civ. 8143 (WHP), 2010 WL 961596, at *10 (S.D.N.Y. Mar. 17, 2010) (dismissing complaint because, even assuming defendants were "on notice of the subprime credit crisis as early as May 2007, knowledge of a general economic trend does not equate to harboring a mental state to deceive, manipulate, or defraud"); *Ambac Assurance*, Op. at 9 (dismissing complaint alleging that defendant knew of the risks of mortgage-backed securities based on articles that discussed problems in the mortgage lending market or that discussed securities never purchased for plaintiff).

[7]  SVCMC attempts to distinguish *Huntington Bancshares* on the basis that that case involved an employee stock ownership plan ("ESOP"), and consequently did not involve a duty to diversify. But the fact that an ERISA fiduciary has an additional duty to diversify investments under 29 U.S.C. § 1104(a)(1)(C) does not lessen a plaintiff's pleading burden with respect to allegations that the fiduciary breached the duty of care prescribed by 29 U.S.C. § 1104(a)(1)(B). Further, the parties in *Huntington Bancshares* disagreed "as to whether the [fund at issue] constitutes an ESOP" and the Court dismissed the complaint assuming that it was not. *See* 620 F. Supp. 2d at 850.

trillion market for residential mortgage-backed securities, it would ignore *Twombly* and *Iqbal* to hold that SVCMC could state a claim merely by alleging that MSIM "continued to invest in [mortgage-backed securities] . . . despite problems" in that market (Pl. Mem. at 12 (internal quotation marks omitted)). Such allegations *might* "permit the court to infer . . . the mere possibility of misconduct," *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949-50 (2009), but they surely do not "raise a right to relief above the speculative level," *ATSI Commc'ns Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).[8]

**B.    SVCMC Does Not Adequately Plead a Failure
To Diversify Pension Plan Investments**

SVCMC's opposition also confirms that it fails to state a claim for breach of the duty to diversify. SVCMC lists seven factors relevant to the duty to diversify (Pl. Mem. at 12), but it fails to apply those factors to the pension fund's investments. SVCMC claims that the fund's investments were not diversified because 60 percent of fund assets were allegedly held in the AMP, but it does not allege any facts to indicate that the fund itself was not suitably diverse. SVCMC repeats from its complaint that *12.6%* of its assets were in non-agency mortgage-backed securities, but ignores the corollary that *at least 87.4% of its holdings were assets other than non-agency mortgage securities.* (*See* Def. Mem. at 27.) Indeed, SVCMC cites *Local 464A* in support of its argument that MSIM breached a duty to diversify, but in *Local 464A*, the defendant invested approximately *a third* of plaintiffs' assets in collateralized mortgage obligations (*see* Pl. Mem. at 13), well beyond the tenth of assets invested in non-agency mortgage securities here.

---

[8]    Although plaintiffs argue that whether MSIM's investment decisions were reasonable cannot be resolved on a motion to dismiss because it is a "fact-intensive dispute[]" and "a matter best left for expert testimony" (Pl. Mem. at 2), plaintiffs cannot dispute that numerous courts resolve such questions at the pleading stage. *E.g. Fisher*, 2010 WL 1257345, at *9 (finding that complaint failed to allege sufficient facts to overcome the presumption of prudence that applies to investment in employer stock); *Am. Commc'ns Ass'n, Local 10, I.B.T.* v. *Ret. Plan for Employees of RCA Corp. & Subsidiary Cos.*, 488 F. Supp. 479, 483 (S.D.N.Y. 1980) (dismissing ERISA and New York common law fiduciary duty claims where complaint "contain[ed] no factual specification of any act the trustees took or failed to take that resulted in the lower rate of return alleged").

SVCMC's diversification argument is the obvious product of hindsight.  Had non-agency mortgage securities risen in value from 2007-09, SVCMC would not be complaining that the investments were undiversified.  SVCMC's approach is inconsistent with ERISA's bar on retrospective pleading, as well as the modern portfolio theory that requires diversification to be assessed with regard to the pension fund *as a whole*, *see*, *e.g.*, *Laborers Nat'l Pension Fund* v. *N. Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir. 1999).[9]

## II.

### QIL DOES NOT ADEQUATELY PLEAD A VIOLATION OF MSIM'S CONTRACTUAL OR COMMON LAW FIDUCIARY DUTIES

QIL's contractual and fiduciary duty claims suffer from the same flaws as SVCMC's claim, because QIL's contention that MSIM "[d]eviated [f]rom" the investment guidelines for the insurance fund (Pl. Mem. at 18) is contradicted by the guidelines.

QIL tries to re-write its insurance fund guidelines by arguing that they designated a "conservative" benchmark index and that the fund "required a high-grade, liquid portfolio" (*id.*), even though *no such language appears in the guidelines*.  QIL also claims that MSIM failed to invest insurance fund assets "in accordance with" the benchmark index (*id.* at 19), even though the guidelines did not require MSIM to copy the benchmark's component securities or risk profile and even though QIL fails to identify any divergence between the securities invested in by the insurance fund and those comprising the benchmark (*see* Def. Mem. at 22-23).  QIL offers no response to MSIM's showing that the investments of which it complains consisted of shares in the OAMP (*id.* at 21); that prior to investing assets in the OAMP, MSIM provided QIL with a prospectus explaining that the OAMP invested in non-agency mortgage securities and that

---

[9]   *Cf.*, *e.g.*, *Ambac Assurance*, Op. at 6-8 (dismissing contract claim where defendant complied with diversification requirements in guidelines).

such securities "*may entail greater risk*" (*id*.); that MSIM provided QIL with monthly account statements showing that the OAMP contained non-agency mortgage securities (*id*.); and that MSIM complied at all times with the effective duration, credit rating, and other restraints in the insurance fund guidelines (*id*. at 22). In short, MSIM followed the specified investment strategy. And QIL does not identify any mortgage-backed securities in *its* account, any issuers of those securities, or any adverse market developments that should have alerted MSIM not to purchase or hold those securities.

Nevertheless, QIL contends that it has stated a claim, maintaining that two cases cited in MSIM's opening brief are inapposite. *First*, QIL argues that *Guerrand-Hermès* v. *J.P. Morgan & Co.*, 769 N.Y.S.2d 240 (1st Dep't 2003), does not apply because, in that case, the plaintiff affirmed that he had extensive investment experience, understood the risks of investing in emerging markets, and disavowed reliance on defendants' investment advice. (*See* Pl. Mem. at 18.) QIL overlooks that in *Guerrand-Hermès*, as here, plaintiff alleged breach of fiduciary duty based on an investment strategy plaintiff had specifically approved and directed after being fully informed of the risks. *See Guerrand-Hermès*, 769 N.Y.S.2d at 242-43; *see also Vladimir* v. *Cowperthwait*, 839 N.Y.S.2d 761, 762-63 (1st Dep't 2007) (cited in Def. Mem. at 23-24) (citing *Guerrand-Hermès* in ruling that defendant did not breach fiduciary duties where defendant informed plaintiff of investment strategy, warned plaintiff of risks, and complied with the diversification requirements of the account).

*Second*, QIL argues that *Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Inv. Mgmt., Inc.*, Index No. 603755/08 (Sup. Ct., N.Y. County, Jan. 29, 2010), is inapplicable because the investment management agreement there restricted defendant's liability to instances of gross negligence or willful misconduct. (*See* Pl. Mem. at 19.) This purported distinction does not

affect *Assured Guaranty*'s holding that a contractual claim alleging a violation of a general "contractual investment objective," such as "obtain[ing] reasonable income while providing a 'high level of safety of capital,'" will not lie where the disputed investments comply with the investment guidelines.  (*See* Def. Mem. at 22-23.)[10]  Such a principle is plainly applicable here.

**III.**

**SVCMC'S CLAIM SHOULD BE DISMISSED
FOR OTHER, INDEPENDENT REASONS**

**A.    SVCMC Does Not Adequately Allege Proximate Causation**

SVCMC argues that loss causation precedents do not govern its claim and that it has adequately pleaded causation.  (*See* Pl. Mem. at 14-15.)  Both arguments are incorrect.

*First*, SVCMC cites no authority for the proposition that loss causation precedents under the federal securities laws are inapplicable to ERISA claims alleging injury from a drop in value of plaintiff's securities.  Indeed, such a principle would ignore the widely recognized similarity between loss causation and proximate causation.[11]  And proximate causation is an element of an ERISA claim.[12]

*Second*, SVCMC's argument that it has sufficiently alleged causation by pleading that the pension fund underperformed its benchmark index is without merit.  SVCMC fails to account for intervening factors, such as the worst economic crisis since the Great Depression, or

---

[10]    *See also Ambac Assurance*, Op. at 7-8 ("Merely alleging failure to pursue an investment objective, where defendant actually followed the specific diversification requirements contained in the Guidelines that were intended to implement that objective, is not sufficient to set forth a claim for breach of contract.").

[11]    *See*, *e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 360 (S.D.N.Y. 2009) ("[C]ourts have consistently characterized loss causation as similar to the tort concept of proximate causation.").

[12]    *See Silverman* v. *Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998).  SVCMC's attempt to distinguish *Silverman* (*see* Pl. Mem. at 15) misses the point:  that SVCMC's complaint presents different causation issues is irrelevant to *Silverman*'s ruling that proximate causation is an element of an ERISA claim. *See*, *e.g.*, *Colliton* v. *Cravath, Swaine & Moore, LLP*, No. 08 Civ. 0400 (NRB), 2008 WL 4386764, at *9 (S.D.N.Y. Sept. 24, 2008) (citing *Silverman* and dismissing ERISA complaint for "failure to allege any link between the breaches and *the amount of loss*" (emphasis added)).

to apportion losses among various causes.  Moreover, although ERISA requires plaintiffs to specify what an appropriate alternative investment would have earned, SVCMC compares the pension fund's performance against the benchmark, an inappropriate baseline given that MSIM's mission was to outperform the benchmark.  (*See* Def. Mem. at 25-27.)[13]

Finally, SVCMC's reliance on *Local 464A* in this context is misplaced as *Local 464A* did not discuss causation, and there is no indication the issue ever arose.

### B.  SVCMC's Claim Is Barred Because It Failed To Object in Writing To the Transactions Within the Required Time Period

SVCMC's claim is barred because it did not object in writing to the transactions at issue in this litigation, as required by the pension fund investment management agreement.  (*See* Def. Mem. at 29.)  SVCMC does not claim to have made any objection to MSIM in writing.  Rather, SVCMC argues that this provision does not apply because SVCMC is "not challenging any particular 'transaction'" but rather, contending "that MSIM mismanaged the portfolio as a whole."  (Pl. Mem. at 21.)  This argument overlooks that the alleged mismanagement of the portfolio is made up of "transactions" reported to SVCMC; MSIM provided account statements that specified, among other things, the trades made on SVCMC's behalf and how much of the pension fund was held in AMP shares, mortgage securities, and non-agency mortgage securities.  SVCMC does not dispute that this provision existed to put it on notice of pension fund investments, so that it could raise any issues with those investments at or close to the time in which the investment decisions were made (*see* Def. Mem. at 29-30), and SVCMC cannot claim

---

[13]   Furthermore, while SVCMC states in its brief that it seeks to recover "losses" (*see* Pl. Mem. at 15), the complaint uses the word "damages" (¶ 27), a term that does not distinguish between losses to the pension fund and failures to make additional returns, or otherwise reveal how SVCMC calculated its damages.  *See Colliton*, 2008 WL 4386764, at *9 (dismissing complaint where, *inter alia*, plaintiff failed to explain how he calculated figure claimed as damages or whether the figure was an actual loss or failure to make additional returns).

it lacked such notice. Further, while SVCMC argues that a contractual limitation on its right to sue must be unambiguous, it points to no ambiguity in the contract.

### IV.

### QIL'S COMMON LAW CLAIMS SHOULD BE DISMISSED FOR OTHER, INDEPENDENT REASONS

#### A.    QIL Does Not Adequately Allege Proximate Causation

QIL makes no attempt to respond to MSIM's argument (*see* Def. Mem. at 30-31) that it failed to plead proximate causation as required by New York law.[14] As with SVCMC's claim (*see supra* Part III.A), QIL's bare allegation that it was "damaged by MSIM's decision to direct a significant portion of the Insurance Fund's assets into" mortgage-backed securities (Pl. Mem. at 19) fails to account for intervening factors or to apportion losses among causes. QIL does not even allege the loss to the fund or explain how MSIM allegedly caused that loss.

#### B.    QIL's Common Law Breach of Fiduciary Duty Claim Is Preempted By New York State's Martin Act

QIL's breach of fiduciary duty claim is precluded by New York's Martin Act, N.Y. Gen. Bus. Law, Art. 23-A, § 352 *et seq*., which preempts non-fraud common law tort claims in the securities context. (*See* Def. Mem. at 31-33.) Since MSIM filed its moving brief, seven additional decisions have dismissed common law claims under the Martin Act.[15]

---

[14]   As noted in MSIM's moving brief, loss causation precedents under federal securities laws are applicable to New York common law claims. *See, e.g., Gordon Partners* v. *Blumenthal*, 293 F. App'x 815, 817 (2d Cir. 2008); *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 578-80 (S.D.N.Y. 2007); *cf. Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec., LLC*, 591 F. Supp. 2d 586, 590, 593 (S.D.N.Y. 2008) ("loss causation is an element of a claim for breach of fiduciary duty"); *Catton* v. *Def. Tech. Sys., Inc.*, No. 05 Civ. 6954 (SAS), 2006 WL 27470, at *10 (S.D.N.Y. Jan. 3, 2006) (failure to plead loss causation "likely dooms" state law claim).

[15]   *See Stephenson* v. *Citco Group Ltd.*, --- F. Supp. 2d ----, No. 09 Civ. 00716 (RJH), 2010 WL 1244007, at *10-15 (S.D.N.Y. Apr. 1, 2010) (dismissing, *inter alia*, breach of fiduciary duty claims); *Meridian Horizon Fund, LP* v. *Tremont Group Holdings, Inc.*, No. 09 Civ. 3708 (TPG), 2010 WL 1257567, at *7-9 (S.D.N.Y. Mar. 31, 2010) (dismissing negligence claims); *In re Tremont Sec. Law, State Law, & Ins. Litig.*, --- F. Supp. 2d ----, Nos. 09 MD 2052, 08 Civ. 11117 (TPG), 2010 WL 1257580, at *7-8 (S.D.N.Y. Mar. 30, 2010) (dismissing, *inter alia*, breach of fiduciary duty claims); *NM Homes, Inc.*, Op. at 9-12 (same); *Ashland Inc.* v. *Morgan Stanley & Co.*, --- F. Supp. 2d ----, No. 09 Civ. 5415 (RPP), 2010 WL 1253932 at *16-17 (S.D.N.Y. Mar. 30,

QIL relies on a handful of cases to the contrary, citing three cases stating that the Martin Act does not preempt any common law claims.[16]  (*See* Pl. Mem. at 19-20.)  Two of these decisions have repeatedly been called "solitary islands in a stream of contrary opinion,"[17] and the third merely follows the same flawed rationale.

QIL also cites *Louros* v. *Kreicas*, 367 F. Supp. 2d 572, 596 (S.D.N.Y. 2005), for the proposition that a "breach of fiduciary duty claim [that] does not allege deception, deliberate or otherwise" is not within the purview of the Martin Act.  (Pl. Mem. at 20.)  However, "[t]he majority of courts . . . hold that the Martin Act precludes *all* common law, non-fraud securities claims."  *NM Homes, Inc.*, Op. at 10 (emphasis added).[18]

Furthermore, even if *Louros* were the law in New York, QIL's claim would still be barred.  In *Assured Guaranty*, the court determined that plaintiff's claims were preempted even applying *Louros* because the complaint alleged that defendant "inexplicably concealed the risks associated with subprime and Alt-A mortgage-backed securities from, and failed to disclose

---

2010) (same); *Barron* v. *Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 WL 882890, at *5-6 (Mar. 10, 2010) (same); *Ambac Assurance*, Op. at 12-15 (same).

[16]  *See Scalp & Blade, Inc.* v. *Advest, Inc.*, 722 N.Y.S.2d 639, 640 (4th Dep't 2001); *Cromer Fin. Ltd.* v. *Berger*, No. 00 Civ. 2498 (DLC), 2001 WL 1112548, at *4 (S.D.N.Y. Sept. 19, 2001); *Xpedior Credit Trust* v. *Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004).

[17]  *See*, *e.g.*, *Meridian Horizon Fund*, 2010 WL 1257567, at *8 (*Scalp & Blade* and *Cromer* stand as "solitary islands in a stream of contrary opinion" (internal quotation marks omitted)); *In re Tremont*, 2010 WL 1257580 at *8 (same); *Pro Bono Invs., Inc.* v. *Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (same); *Sedona Corp.* v. *Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (same); *Marcus* v. *Frome*, 329 F. Supp. 2d 464, 476 n.4 (S.D.N.Y. 2004) (same); *Nanopierce Techs., Inc.* v. *Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2003 WL 22052894, at *4 (S.D.N.Y. Sept. 2, 2003) (same).

[18]  *See*, *e.g.*, *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 172 (S.D.N.Y. 2009) ("The Martin Act preempts, at least, the following common law claims when they are predicated on the purchase or sale of securities within or from New York:  negligence; breach of fiduciary duty; negligent misrepresentation; unjust enrichment; and aiding and abetting any of these claims." (footnotes omitted)); *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) (agreeing with the "analysis set forth in . . . a host of . . . state and federal decisions finding breach of fiduciary duty claims arising in the securities context to be preempted by the Martin Act").

them" to plaintiff.  Op. at 7, 12 & n.9.[19]  In *NM Homes*, the Court similarly determined that plaintiffs' claims would be preempted under the rule of *Louros* where, *inter alia*, the complaint alleged that defendant purchased unsuitable and unauthorized subprime securities and misled plaintiff as to the extent of the risks involved.  *See* Op. at 11-12.

Similarly, here QIL claims that MSIM "knew, or should have known, about the risks . . . to which it exposed the QIL portfolio" (Compl. ¶ 51), "knew, or should have known, that these securities were not suited to the QIL portfolio" (*id*. ¶ 52), and "fail[ed] to invest in accordance with the conservative benchmark index provided by QIL, despite knowing that this conservative benchmark index would be used to assess MSIM's performance" (Pl. Mem. at 19).  QIL's allegations amount to a claim that MSIM engaged in a bait-and-switch, and QIL's argument that its claim "do[es] not involve misrepresentation" (Pl. Mem. at 20) is simply inconsistent with its own pleading.

### C.    QIL's Common Law Breach of Fiduciary Duty Claim Should Be Dismissed as Duplicative of the Breach of Contract Claim

QIL argues that its fiduciary duty claim is not duplicative of its contract claim because investment advisors "*may*" be subject to tort liability based on fiduciary duties independent of their contractual ones.   (Pl. Mem. at 22 (internal quotation marks omitted) (emphasis added).)   QIL overlooks the clear rule that a breach of fiduciary duty claim is duplicative where, as here (*see* Compl. ¶ 48), it is "based upon the same facts and theories as [a] breach of contract claim."  *Brooks* v. *Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272-73 (3d Dep't 2006).  *Brooks* establishes that this rule applies even where the defendant is an investment advisor who owed fiduciary duties to the plaintiff.  *See id*.  The reason is that an independent

---

[19]    *See also Ambac Assurance*, Op. at 14-15 (ruling common law claims were preempted even under *Louros* standard based on, *inter alia*, "allegations in the Complaint that [defendant] was aware of the risks related to the Subprime Securities [in plaintiff's account] and failed to disclose them to plaintiff").

claim for breach of fiduciary duty can lie only where there is a relationship of "higher trust" that is created "*apart from the terms of the contract*." *Id.* (internal quotation marks omitted) (emphasis in *Brooks*). Although QIL asserts that such a relationship existed between it and MSIM, it points to no allegations or facts supporting such an assertion. QIL's fiduciary claim thus falls squarely within the rule of *Brooks*.[20]

### D. QIL's Fiduciary Breach Claim Is Barred by the Economic Loss Doctrine

QIL argues that the economic loss rule does not bar fiduciary duty claims, as "such claims are rooted in the substantive laws of agency, contract and equity, rather than tort." (*See* Pl. Mem. at 23 (quoting *Better Benefits, Inc.* v. *Protective Life Ins. Co.*, No. 03 Civ. 2820 (LAP), 2004 WL 633730 (S.D.N.Y. Mar. 30, 2004)).) *Better Benefits*, however, applied Illinois law. *See* 2004 WL 633730, at *1 n.1. QIL does not cite any authority, nor is MSIM aware of any, that the same rule applies in New York. Further, QIL's claim that the economic loss rule does not apply because "QIL does not allege negligence" (Pl. Mem. at 23) is meritless. The aim of the economic loss rule—"one of the dikes that New York courts have erected in their inevitable attempt to keep contract law from drown[ing] in a sea of tort"—does not turn on the specific claim asserted. *Carmania Corp., N.V.* v. *Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (internal quotation marks omitted); *see also id.* ("If the *damages suffered* are of the type remediable in contract, a plaintiff may not recover in tort." (emphasis added)).

Here, QIL does not dispute that it suffered only economic losses, and New York's economic loss rule bars QIL's breach of fiduciary duty claim.

---

[20] The cases QIL cites are not to the contrary. Neither involved a complete overlap of factual and legal predicates between the contractual and fiduciary duty claims. *See Bullmore* v. *Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 148 (1st Dep't 2007) (noting the "similarity" between the conduct alleged to constitute a breach of contract and that alleged to constitute a breach of fiduciary duty); *Gray & Assocs., LLC* v. *Speltz & Weiss, LLC*, No. 150446/2007, 2009 WL 416138, at *7 (Sup. Ct., N.Y. County Feb. 2, 2009) ("the claims are not wholly duplicative").

**V.**

**MSIM'S OPENING BRIEF DOES NOT RAISE QUESTIONS OF FACT**

**A.      The Braccia Exhibits Are Properly Considered on This Motion**

SVCMC and QIL argue that MSIM's opening brief "refers to documents outside the Complaint that should not be considered on this motion to dismiss."  (Pl. Mem. at 23-24.) But courts deciding a motion to dismiss under Rule 12(b)(6) may consider all of the following:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission . . . .[21]

All of the documents attached to the Braccia Affidavit fall within at least one of these categories. Moreover, plaintiffs do not challenge the authenticity of any of these documents, and MSIM does not submit them for their truth, but only to show what statements were made to plaintiffs.[22]

Braccia Exhibits 1, 2, 4, 12 and 13 are the investment management agreements, amendments, and guidelines.  They are either quoted or otherwise referenced in the complaint,[23]

---

[21]   *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (Pollack, J.) (footnotes omitted), *aff'd sub nom. Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

[22]   *See, e.g., Kramer* v. *Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (documents filed with the SEC can be considered on a motion to dismiss in part because "no serious question as to their authenticity can exist" and because, where such documents are alleged to contain misrepresentations and omissions, the documents are relevant "not to prove the truth of their contents but only to determine what the documents stated").

[23]   *See* Compl. ¶ 1 (referencing pension fund guidelines); *id.* ¶ 14 (referencing pension fund investment management agreement); *id.* ¶ 20 (quoting pension fund guidelines);  *id.* ¶ 21 (referencing pension fund guidelines); *id.* ¶¶ 23-24, 26, 28, 31 (comparing pension fund's holdings and performance to those of securities comprising benchmark index specified in guidelines); *id.* ¶¶ 45, 67 (noting MSIM's contractual engagement to manage insurance fund assets); *id.* ¶ 47 (referencing insurance fund guidelines); ¶¶ 48, 50, 52-53 (alleging that insurance fund investments deviated from strategy reflected in insurance fund guidelines); *id.* ¶¶ 65, 74(c) (seeking disgorgement of fees paid under investment management agreements for pension and insurance funds).

and thus are incorporated by reference.[24]   Moreover, they are clearly integral to the complaint: the gravamen of plaintiffs' claims is that MSIM "deviated from the specified strategy" for each fund (Compl. ¶¶ 22, 48), and the investment management agreements and guidelines specified those strategies.  *See, e.g.*, *Int'l Audio Text Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 71-72 (2d Cir. 1995) (agreement was "integral" to complaint that "relie[d] heavily upon its terms and effect"); *Prescient Acquisition Group, Inc.* v. *MJ Publ'g Trust*, No. 05 Civ. 6298 (PKC), 2006 WL 2136293, at *3 (S.D.N.Y. July 31, 2006) (considering contract in contract dispute).

Braccia Exhibit 3 is correspondence in which MSIM requested permission from SVCMC to invest SVCMC assets in the AMP.  Braccia Exhibits 5 through 9 and 14 consist of prospectuses, SAIs, and shareholder reports for the AMP and OAMP.  These materials show the information MSIM provided to SVCMC concerning the AMP, the risk disclosures that MSIM provided to SVCMC and QIL, and the holdings of the AMP and OAMP.  Because plaintiffs complain that these investments were too risky for their accounts, these documents are integral to the complaint.[25]   In addition, Braccia Exhibits 5 through 9 are also public disclosure documents that were required to be filed, and were filed, with the SEC.[26]

Braccia Exhibits 10, 11, and 15 are records and statements for the accounts upon which plaintiffs are suing.   Those documents are materials of which plaintiffs have "knowledge or possession" and on which they relied in framing the complaint, as these documents conveyed

---

[24]   *See, e.g.*, *Levy* v. *Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001) ("[I]t was appropriate for the district court to refer to the documents attached to [defendant's] motion to dismiss since the documents were referred to in the complaint."); *Stuto* v. *Fleishman*, 164 F.3d 820, 826 n.1 (2d Cir. 1999) (document sent to plaintiff and discussed in complaint was incorporated by reference).

[25]   *See, e.g.*, *I. Meyer Pincus & Assocs., P.C.* v. *Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (prospectus was integral to complaint alleging securities fraud based on statements and omissions in prospectus).

[26]   *See, e.g.*, *Kramer*, 937 F.2d at 773-74 (noting that the contents of relevant public disclosure documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" under Fed. R. Evid. 201(b)(2)).

to plaintiffs such details about the composition and performance of their accounts as are provided, for example, in ¶¶ 23-26 of the complaint.[27]

### B.    Plaintiffs' Allegations Do Not Create Any Factual Questions

SVCMC and QIL claim that MSIM's motion to dismiss should be denied because whether they approved the investments in question and whether MSIM provided adequate investment advice are "inherently factual [questions] and thus inappropriate for a motion to dismiss."  (Pl. Mem. at 17, 18 (citing *Koch* v. *Dwyer*, 98-CV-5519, 1999 U.S. Dist. LEXIS 11101 (S.D.N.Y. July 22, 1999)).)  Again, plaintiffs miss the mark.  Their approval of the investments in question is clear from documents submitted in connection with MSIM's opening brief.  (*See* Braccia Aff. Exs. 4, 13 ¶ 5, 14.)  So, too, the adequacy of MSIM's disclosures can be assessed on the basis of the relevant Braccia Exhibits.  (*See* Braccia Aff. Exs. 3-11, 14-15.)[28]

Further, confronted with these documents, and the arguments in MSIM's opening brief based thereon, SVCMC and QIL merely echo the complaint's conclusory assertions that MSIM's investment decisions were improper.  Their complaint can and should be dismissed.

*        *        *

Finally, in a footnote, plaintiffs request the opportunity to replead should the Court dismiss any of their claims.  (Pl. Mem. at 3 n.2.)  That request should be denied because plaintiffs have already amended their complaint once *after being put on notice of the deficiencies*

---

[27]   *See, e.g., Cortec Indus. Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

[28]   This case is readily distinguishable from *Koch*, which asserted ERISA claims arising out of investments in the stock of an employer that became worthless between 1991 and 1993, a period that also saw a 45% stock price drop in one day on the announcement that an accounting firm had uncovered $150 million of questionable assets on the employer's books, as well as the filing of "approximately 19 securities fraud cases" against the employer and related persons, *see* 1999 U.S. Dist. LEXIS 11101 at *5-9.  Thus, during the relevant timeframe, there was ample reason to question whether defendant's choice to continue investing retirement plan assets in the employer's stock met the duty of care required by ERISA.

in their original pleading.  In accordance with Your Honor's Individual Practices, MSIM submitted a pre-motion conference letter setting forth its anticipated grounds for a motion to dismiss, which included *every ground* on which MSIM subsequently moved to dismiss.  (*See* Docket No. 9.)  Following submission of that pre-motion letter, plaintiffs asked for and were granted permission to amend in an attempt to cure the deficiencies that MSIM had identified. (*See* Docket No. 10, ¶ 3.)  Plaintiffs have thus had a second opportunity to state a claim.  In addition, plaintiffs' cursory request to replead is not accompanied by any indication of the allegations plaintiffs would add to cure the deficiencies warranting dismissal.  For each of these reasons, plaintiffs should not now receive a third bite at the apple.[29]

## CONCLUSION

For the reasons set forth above, and in its opening brief, MSIM respectfully requests that the Court dismiss plaintiffs' amended complaint, with prejudice.

Dated: New York, New York
       April 13, 2010

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  /s/  Richard A. Rosen
     Richard A. Rosen (rrosen@paulweiss.com)
     Douglas M. Pravda (dpravda@paulweiss.com)

1285 Avenue of the Americas
New York, New York  10019
Tel.:  (212) 373-3000
Fax:  (212) 757-3990

*Attorneys for Defendant Morgan Stanley Investment Management, Inc.*

---

[29]   *See, e.g.*, *In re Philip Morris Sec. Litig.*, 872  F. Supp. 97, 103 n.6 (S.D.N.Y. 1995) (denying leave to replead a second time where request, made in footnote at end of plaintiffs' brief, listed additional allegations that would not have cured deficiencies prompting dismissal), *aff'd in relevant part sub nom. San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996).

20